UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|

| Title | F.T.C. v. American Financial Support Services, Inc. |
|---|---|

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|

| Lisa Bredahl/Rolls Royce Paschal | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Order to Show Cause Why a Preliminary Injunction Should Not Issue

    Before the Court is the Federal Trade Commission's ("F.T.C.") Application for an Order to Show Cause Why a Preliminary Injunction Should Issue ("Motion"). Mot., ECF No. 2-2. Defendants American Financial Support Services, Inc. ("AFSS"), US Financial Freedom Center, Inc. ("USFFC") and Jay Singh ("Singh") (collectively, the "AFS Defendants") opposed the Motion. Opp'n. 1. ECF No. 48. Defendants Carey G. Howe ("C. Howe"), Ruddy Palacios aka Ruddy Barahona ("Palacios"), and Shunmin "Mike" Hsu ("Hsu") (the "Arete Individuals") and Arete Financial Group d/b/a Arete Financial Freedom ("AFF") and Arete Financial Group LLC ("Arete LLC") (collectively, "Arete") also opposed the motion. Opp'n. 2, ECF No. 49. Oliver Pomazi ("Pomazi") later joined Arete and the Arete Individual's opposition. ECF No. 69.

    The remaining defendants have not filed an appearance:

        CBC Conglomerate LLC d/b/a 1file.org ("1file.org");

        Diamond Choice Inc. d/b/a Interest Rate Solutions ("Diamond Choice");

        J&L Enterprise LLC d/b/a Premier Solutions Servicing ("PSS");

        La Casa Bonita Investments, Inc. f/k/a La Casa Bonita Investments LLC d/b/a Education Loan Network and d/b/a Edunet (collectively, "LCB") and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

Anna C. Howe ("A. Howe").[1]

Relief Defendant MJ Wealth Solutions, LLC ("MJ Wealth") has not filed an appearance.

For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

The Complaint alleges the following five causes of action: (1) violations of the F.T.C. Act (15 U.S.C. § 45(a)) (deceptive student loan debt relief representations); (2) violations of the Telemarketing Sales Rule ("TSR") (16 C.F.R. pt. 310) (advance fee for debt relief services); (3) misrepresentation of affiliation; (4) material debt relief misrepresentations; and (5) that MJ Wealth has received assets from Defendants that are traceable to funds obtained through deceptive practices. Compl., ¶¶ 51-69, ECF No. 1. The Complaint asserts that the Corporate Defendants operate a common enterprise. Id. at ¶ 22. The Individual Defendants allegedly control the Corporate Defendants. Id.

The Complaint alleges that Defendants (1) engage in deceptive marketing practices; (2) make deceptive payment reduction representations; (3) make misrepresentation as to payments received from consumers and their servicing; (4) make misrepresentation as to their affiliation with the government; (5) collect upfront fees when consumers agree to their services. See generally, Compl.

In conducting their business, the Corporate Defendants have made four different types of misrepresentations to consumers. First, Defendants directly represent to consumers that they are affiliated with the Department of Education ("DOE") when they are not. Pl. Ex. 3, 89 ("Mr. Scott stated that AFSS was a third party company that worked with the Department of Education [] to assist people who might be eligible for student loan debt forgiveness."); Pl. Ex. 4, 96; Pl. Ex. 12, 349; Pl. Ex. 15, 441. Consumers only realize the Corporate Defendants are not affiliated with DOE or their loan servicers until they speak to their federal loan servicers. See e.g., Pl. Ex. 8, 210; Pl.

---

[1] For ease of reference, unless otherwise noted, the Court in its order refers collectively to all defendants as "Defendants," all individual defendants as the "Individual Defendants," and all corporate defendants, as the "Corporate Defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

Ex. 16, 448 ("I explained that I had paid Arete based on its claims that it was working with Mohela and DOE to reduce my student loan payments. The Mohela representative that I talked to explained that they did not work with Arete and suggested that I may have been misled.").

Second, Defendants claim that if consumers sign up for their services and pay them both an upfront fee and regular monthly payments, they will enroll consumers in government programs that will lower their monthly payments or loan balances.[2] For example, the F.T.C. provides evidence that consumers were told they would obtain loan forgiveness after specific time periods.[3] Such assertions are misrepresentations since federal student loan forgiveness programs have strict eligibility requirements requiring payments for ten or more years, and monthly payments on income driven repayment plans can vary based upon changes in a borrower's circumstance. See Pl. Ex. 22, 701-702.

The third type of misrepresentation made by the Corporate Defendants is that they will apply the fees paid to them by consumers to the consumers' student loan balances or monthly payments.[4] However, the Corporate Defendants did not apply the fees to the student loans.[5] Consumers often discovered that the money was not applied to their loans when their loans became delinquent. See e.g., Pl. Ex. 17, 494. Furthermore, the Corporate Defendants worked with third parties who offered loans to consumers who could not afford to pay the upfront fee, thereby burdening consumers with an additional loan. See e.g., Pl. Ex. 19, 559 ("Brian explained . . . that they could arrange a loan to finance the cost of the program.").

Fourth, the Corporate Defendants misrepresented that they would be taking over

---

[2] See e.g., Pl. Ex. 1, 1-2; Pl. Ex. 3, 90; Pl. Ex. 4, 97; Pl. Ex. 5, 109-10; Pl. Ex. 6, 145.

[3] See e.g., Pl. Ex. 3, 90 ("He said they would reduce the term of my loan from 160 months to 120 months"); Pl. Ex. 8, 209 ("The 1file.org representative said that thereafter, if I made monthly payments of $39 for 120 months, the balance of my student loans would be forgiven"); Pl. Ex. 9, 214-15.

[4] See e.g., Pl. Ex. 1, 1 ("[H]e was very clear that the $39 monthly payment would be applied to my student loans[.]"); Pl. Ex. 4, 99 ("[I believed that Arete had me in a loan repayment program to pay $39 for 20 years, and that Arete would be applying that $39 entirely towards my loans.").

[5] See e.g., Pl. Ex. 1, 4-5, 8; Pl. Ex. 2, 51; Pl. Ex. 4, 99.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

the loan servicing from the federal loan servicers by processing payments and filing certifications as required under the DOE's income driven repayment programs.[6] Consumers were also told that they should stop paying their current servicer and instead make payments to Defendants. See, e.g., Pl. Ex. 7, 173-74 ("He told me that I should stop paying my student loan through Navient and just pay 1file.org because 1file.org would be managing my student loans"). Although Defendants' representatives provided during their phone call with consumers a standard contract with fine-print explaining that they were not affiliated with the government, were not loan servicers, and would not attempt to reduce or adjust the consumer's student loan debt, the disclaimers contradicted what representatives said verbally to consumers in the same call. See, e.g., Pl. Ex. 1, Attach. B. Defendants also urged consumers to sign the contract while they were still on the phone, and the forms jump to different screens when a consumer signs in one space, thus not allowing them to review the entire contract. See, e.g., Pl. Ex. l, 2; Pl. Ex. 2, 49; Pl. Ex. 3, 91.

There is evidence that if consumers were convinced that Defendants were loan servicers, Defendants would ask for consumers' login credentials to their DOE Federal Student Aid website or their loan servicer's website and then change the login credentials, contact address, and email address without consumer authorization.[7] As a result consumers do not receive communications from their actual loan servicers such as information about missed payments. See e.g., Pl. Ex. 22, 704-05. The Higher Education Loan Authority of the State of Missouri ("MOHELA") is also under the impression that the Corporate Defendants use consumer information to impersonate consumers or their family members on calls. See e.g., id. at 702-03. The Corporate Defendants have also misrepresented or directed consumers to misrepresent certain information such as their family size and income. See e.g., Pl. Ex. 1, 3; Pl. Ex. 15, 444; Pl. Ex. 19, 562.

On November 4, 2019, the F.T.C. requested that the court enter a temporary restraining order ("TRO:"). ECF No. 3. The Court granted the TRO the same day. ECF No. 41.

---

[6]See e.g., Pl. Ex. 3, 90 ("Mr. Greene told me that AFSS would have my loan transferred from Navient to AFSS and AFSS would service it directly."); Pl. Ex. 7, 173.

[7]Pl. Ex. 1, 2, 3-4; Pl. Ex. 4, 97; Pl. Ex. 6, 145; Pl. Ex. 8, 208; Pl. Ex. 3, 89; Pl. Ex. 19, 564; Compare Pl. Ex. 22, 704, 709-14 with Pl. Ex. 23, 732, 1184-85; see also Pl. Ex. 6, 147; Pl. Ex. 9, 256.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-cv-02109 JVS(ADSx)                    Date    11/26/19

Title       F.T.C. v. American Financial Support Services, Inc.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Moreover, in the Ninth Circuit a plaintiff may meet this burden if they "demonstrate[] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotations and citation omitted) (emphasis in original). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

However, "in a case involving statutory enforcement, where the applicable statute authorizes injunctive relief, the traditional irreparable injury showing is not required." F.T.C. v. Consumer Def., LLC, 926 F.3d 1208, 1214 (9th Cir. 2019) (concluding that the F.T.C. v. World Wide Factors, Ltd., 882 F.2d 344, 346–47 (9th Cir. 1989), as amended, and United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 175–76 (9th Cir. 1987), can be applied consistently with Winter). While irreparable harm may be presumed, the movant is still required to demonstrate a likelihood of success on the merits and that the balance of the equities favors injunctive relief. Consumer Def., LLC, 926 F.3d at 1212.

## III. DISCUSSION

### A.    Evidentiary Objections

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

The Arete Individuals and Arete filed evidentiary objections to certain declarations filed by the F.T.C. in support of the TRO. ECF No. 49-5. The Court relies only on that evidence which it deems admissible. Any remaining objections are overruled as moot. The Court further notes that it gives little credence to blanket objections. See Amaretto Ranch Breedables v. Ozimals Inc., 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012) ("This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development . . . ."); Californians for Disability Rights, Inc. v. California Dep't of Transp., 249 F.R.D. 334, 350 (N.D. Cal. 2008) ("The Court declines the defendants' invitation to analyze objections that defendants did not themselves bother to analyze, and the objections are overruled on those grounds alone."); Communities Actively Living Indep. & Free v. City of Los Angeles, 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011) ("It is not the Court's responsibility to attempt to discern the City's grounds for objecting to evidence submitted by Plaintiffs where the City merely repeats the same categorical objections but provides little to no explanation as to why the subject evidence is objectionable.").

### B. Preliminary Injunction

#### 1. Likelihood of Success on the Merits

##### (A) Violations of the F.T.C. Act

Section 5 of the F.T.C. Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" F.T.C. v. Stefanchik, 559 F.3d 924, 928 (9th Cir. 2009) (quoting F.T.C. v. Gill, 265 F.3d 944, 950 (9th Cir. 2001)). A representation is "likely to mislead consumers" when (1) the representation is false; or (2) the advertiser lacked a reasonable basis for its claims. F.T.C. v. John Beck Amazing Profits, LLC, 865 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012) (citing F.T.C. v. U.S. Sales Corp., 785 F.Supp. 737, 748 (N.D.Ill.1992); In the Matter of Thompson Med. Co., Inc., 104 F.T.C. 648, 64 (1984)). Material misrepresentations are those that involve information important to consumers and thus are "likely to affect their choice of, or conduct regarding, a product." F.T.C. v. Cyberspace.Com LLC, 453 F.3d 1196, 1201 (9th Cir. 2006). Express representations are presumed to be material. F.T.C. v. Pantron I Corp., 33 F.3d 1088, 1096 (9th Cir. 1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

However, a court may consider "the overall 'net impression' that Defendants' representations make upon consumers." Id. at 1200.

The F.T.C. has provided evidence that Defendants make four different types of misrepresentations to deceive consumers. First, Defendants directly represent to consumers that they are affiliated with DOE when they are not.[8] Second, Defendants claim that if consumers sign up for their services and pay them both an upfront fee and regular monthly payments, they will enroll consumers in government programs that will lower their monthly payments or loan balances.[9] Third, Defendants tell consumers that they will apply the fees paid to them by consumers to the consumers' student loan balances or monthly payments.[10] Fourth, Defendants tell consumers that they will be taking over the loan servicing from the federal loan servicers by processing payments and filing certifications as required under the DOE's income driven repayment programs.[11] Such representations are certainly material since they would influence a consumer's choice in determining whether to engage the Corporate Defendants given that consumers believed (as evidenced in multiple consumer declarations) that Defendants were affiliated or worked with DOE, that signing up for Defendants' services would result in lower monthly payments and loan balances, and that their loans were going to be serviced by the Corporate Defendants who would apply payments to their student loan balances. Such representations were so material that consumers would even give Defendants their account login credentials for their DOE Federal Student Aid account or loan servicer account.[12]

The Court notes that Arete and the Arete Individuals argue that they decided to

---

[8]Pl. Ex. 3, 89; Pl. Ex. 4, 96; Pl. Ex. 12, 349; Pl. Ex. 15, 441.

[9]See e.g., Pl. Ex. 1, 1-2; Pl. Ex. 3, 90; Pl. Ex. 4, 97; Pl. Ex. 5, 109-10; Pl. Ex. 6, 145.

[10]See e.g., Pl. Ex. 1, 1 ("[H]e was very clear that the $39 monthly payment would be applied to my student loans[.]"); Pl. Ex. 4, 99 ("[I believed that Arete had me in a loan repayment program to pay $39 for 20 years, and that Arete would be applying that $39 entirely towards my loans.").

[11]See e.g., Pl. Ex. 3, 90 ("Mr. Greene told me that AFSS would have my loan transferred from Navient to AFSS and AFSS would service it directly."); Pl. Ex. 7, 173.

[12]Pl. Ex. 1, 2, 3-4; Pl. Ex. 4, 97; Pl. Ex. 6, 145; Pl. Ex. 8, 208; Pl. Ex. 3, 89; Pl. Ex. 19, 564; Compare Pl. Ex. 22, 704, 709-14 with Pl. Ex. 23, 732, 1184-85; see also Pl. Ex. 6, 147; Pl. Ex. 9, 256.

Case 8:19-cv-02109-JVS-ADS   Document 75   Filed 11/26/19   Page 8 of 19   Page ID #:3393

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

withdraw from the student loan advisory business in April 2019. C. Howe, Decl. ¶ 5. C. Howe declares that Arete "announced this change to [] employees and ceased [] marketing efforts shortly thereafter. I shut down our student loan consulting business website at aretefinancialfreedom.com and redirected it to aretefinancial.org, which is solely dedicated to Arete's consumer debt settlement services. We also stopped efforts to enroll new customers, cut ties with affiliates who were directing customers to us; and laid off or retrained employees to focus on the consumer debt side of the business. The only student loan debt customers remaining with Arete are those who were signed up prior to the winding down of that business whose contracts with Arete required us to provide them with annual recertification services until the contracts end." Id. However, the fact that Arete and the Arete Individuals continue to provide consumers with "recertification services" that are premised on misrepresentations is evidence in itself that there is a continuing harm to consumers and that such practices are ongoing. Furthermore, Arete continues to charge these customers monthly service fees premised on deceptions. See Id. at ¶ 7. Thus, the Court finds these arguments unconvincing. Separately, as will be discussed in Section III.B.1(D), *infra*, there is evidence here that the Corporate Defendants, including Arete, are operating under one common enterprise.

Given that the F.T.C. has provided significant amounts of evidence that Defendants made material misrepresentations, the Court finds that the F.T.C. has met their burden of establishing their likelihood of success on the merits as to the deceptive misrepresentations.

        *(B)*    *Violations of the TSR*

The TSR prohibits "sellers" and "telemarketers" from:

> Requesting or receiving payment of any fee or consideration for any debt relief service until and unless: (A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; [and] (B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

debt collector[.]

16 C.F.R. § 310.4.

The TSR also prohibits misrepresentations as to a "seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity." 16 C.F.R. § 310.3(a)(2)(vii).

Additionally, the TSR prohibits misrepresentations as to:

> Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt. . .

16 C.F.R. § 310.3(a)(2)(x).

The F.T.C. alleges that Defendants have committed violations of each of these sections of the TSR. To support their claim, the F.T.C. has provided evidence that Defendants charge fees before they work on a consumer's file. See Pl. Ex. 23, 1465; Pl. Ex. 2, 47-48, 62; Pl. Ex. 9, 214, 238. The F.T.C. has provided evidence that Defendants routinely misrepresent that they are associated with or work with the DOE despite having no relationship with them. See e.g., Pl. Ex. 3, 89; Pl. Ex. 4, 96; Pl. Ex. 12, 349; Pl. Ex. 15, 441. Additionally, as discussed in detail in Section III.B.1(A), *supra*, Defendants have made material misrepresentations of Section 5 of the F.T.C. Act. Accordingly, these violations are also material misrepresentations of the TSR.

Given that the F.T.C. has provided sufficient evidence supporting their claims that Defendants have committed violations of the TSR, the Court finds that the F.T.C. has met their burden of establishing their likelihood of success on the merits as to the deceptive misrepresentations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

### (C) Corporate Defendants

"Where one or more corporate entities operate in common enterprise, each may be held liable for the deceptive acts and practices of the others." F.T.C. v. John Beck Amazing Profits, LLC, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012) (citing F.T.C. v. Think Achievement Corp., 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000)). In determining whether a common enterprise exists, courts consider whether there is (1) common control; (2) sharing office space and offices; (3) whether business is done through interrelated companies; and (4) whether funds are commingled. Id.

The F.T.C. provides the following evidence supporting that the Corporate Defendants are a common enterprise: (1) Bank records with extensive transfers between the Corporate Defendants' bank accounts;[13] (2) similarly designed websites[14] that at times even redirect to one another; and (3) the Corporate Defendants' use of common phone accounts to conduct marketing calls.[15] Reports from consumers also indicate that Consumer's believed the Corporate Defendants were interrelated. See e.g., Pl. Ex. 23, 671 ("1File.org's information is on the "legal" documents signed, leading to the belief they are the parent company of AFSS."). Pursuant to the temporary receiver's initial report, there is also evidence that the Corporate and Individual Defendants shared offices primarily out of one office building located at 1261 East Dryer Road, Santa Ana, CA. Rec. Reprt., ECF No. 57-1, 6.

The evidence is indicative of a common enterprise given that the Corporate and Individual Defendants shared offices, business was conducted through interrelated companies and there was a high volume of funds transferred among the Corporate Defendants. Accordingly, the F.T.C. has met its burden of establishing their likelihood of success on the merits as to whether the Corporate Defendants are a common enterprise.

### (D) Individual Defendants

Individuals are liable for corporate violations of the F.T.C. Act if (1) they

---

[13] Pl. Ex. 25, 1809-10; Pl. Ex. 23, 1042-44.

[14] See Pl. Ex. 23, 734-35 (and corresponding non-paper exhibits).

[15] Id. at 736-37, 742-43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

"participated directly in the deceptive acts or had the authority to control them and (2) [] had knowledge of the misrepresentations, [were] recklessly indifferent to the truth or falsity of the misrepresentation, or [were] aware of a high probability of fraud along with an intentional avoidance of the truth." John Beck, 865 F. Supp. 2d at 1082 (citing F.T.C. v. Stefanchik, 559 F.3d 924, 931 (9th Cir. 2009)) (internal quotations omitted).

The F.T.C. provides the following evidence as to the Individual Defendants' control of the Corporate Defendants:

C. Howe is president of AFF, president of Arete LLC, and manager of 1file.org. Pl. Ex. 23, 717-18, 760, 770, 1430, 1642. C. Howe also started LCB as a limited liability company in 2012, incorporated it in 2016, and is its CEO, owner, and sole director. Id. at 782-787. C. Howe is also a signatory on LCB's bank accounts, has served as its contact person for merchant processing accounts, and has registered web domains for it.[16]

A. Howe is COO and manager of 1file.org. Id. at 1518. A. Howe has responded to consumer complaints submitted to the Better Business Bureau on behalf of 1file.org. Id. at 1454-56. A. Howe has also represented herself in voicemails as handling refunds, chargebacks, and sales issues for 1file.org. Id. at 725, 939.

Hsu manages 1file.org, incorporated AFF and has served as its CFO, Secretary, and director. Id. at 756, 772. Hsu has also served as manager of Arete LLC. Id. at 766. Hsu is also the CFO of LCB. Id. at 719, 785.

Palacios has served as the Secretary, COO, and director of AFF, is CEO of Arete LLC, and registered aretefinancial.org. Id. at 731-32, 757-58, 763, 1167, 1174, 1633. Palacios serves as Diamond Choice's owner, CEO, CFO, director, and president. Id. at 778-79, 1114, 1540.

Pomazi is AFF's CEO, whose duties include responding to consumer complaints. Id. at 741, 744-45, 1446, 1448, 1633. Pomazi is also the owner of PSS, and the signatory on its bank accounts. Id. at 730, 739, 781, 1150, 1154, 963-65.

Singh formed AFSS and USFFC in January 2014 and serves as their president and

---

[16] Id. at 719-22, 735, 783-85, 799, 813, 818, 990, 994, 1000, 1002.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

sole director. Id. at 716, 720, 750, 755, 793. Singh also serves as the signatory to USFFC's bank account. Id. at 728, 980-988.

    Therefore, the F.T.C. has met its burden of proving that the individuals controlled the Corporate Defendants.

    As to whether the Individual Defendants had knowledge of or at least were recklessly indifferent as to wrongdoing, the F.T.C. argues that C. Howe, Hsu, and Palacios are officers of Arete, LLC, which is under orders by two different state regulators for offering debt relief services without a license. Pl. Ex. 23, 762-68, 1432, 1436. However, the allegations herein are different in kind from operating without a license and thus the Court affords this evidence little weight.

    Nonetheless, "[t]he extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability." F.T.C. v. Affordable Media, 179 F.3d 1228, 1235 (9th Cir. 1999). The F.T.C. provides evidence that Hsu, C. Howe and A. Howe attended a meeting in which they discussed chargebacks and how to make improvements to avoid them. Id. at 23, 1382-83. Pomazi, C. Howe, A. Howe, and Singh have responded to consumer complaints. Id. at 1446, 1453-54, 1470. Palacios shares an office space with Hsu, was secretary, COO, and director of AFF, is CEO of Arete, and held signatory authority on Arete's bank accounts. See 731-32, 757-58, 763, 1008, 1010, 1012, 1014, 1018, 1020, 1167, 1174, 1633; Rec. Reprt. 7. Furthermore, the Receiver's initial report details a May 1, 2019 Whatsapp conversation where Palacios chats with C. Howe regarding shielding Arete from liability "motivated at least in part by awareness of increasing regulatory pressures":

> Palacios stated that they "[n]eed[ed] to cut off SL [student loan] affiliates today if possible." He emphasized that it "ha[d] to be done," because even though they "gave up 300k a month because of liability with SL," they were "still taking liability by enrolling files for other companies to earn pennies." Carey Howe responded that "Sye or 1file has to take them," referring to Student Loan Pro (Gilani's company) and their other student loan business, Defendant 1file.org, and showing a clear intent to allocate risk away from Arete and to these two other companies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

Rec. Reprt. 11.

The Court finds this evidence convincing as to whether the individuals had knowledge of or were recklessly indifferent as to the alleged misrepresentation which would have led to the voluminous chargebacks and consumer complaints.

The Court notes that Signh has declared that he did not have knowledge of the alleged deceptive practices and only "reviewed and responded to approximately thirteen (13) complaints." Singh Decl. ¶8, ECF No. 48. Such self serving declaration does not refute the evidence provided by the F.T.C.. Furthermore, even knowledge of only thirteen complaints would still have notified Singh of such deceptive practices.

Accordingly, the Court finds that Defendants are likely to prevail as to the Individual Defendants.

### (E) The Relief Defendant

"Federal courts may order equitable relief as to a person against whom no wrongdoing is alleged in an enforcement action 'if it is established that the relief defendant possesses property or profits illegally obtained and the relief defendant has no legitimate claim to them.'" F.T.C. v. Good Ebusiness, LLC, 2016 WL 3704489, at *7 (C.D. Cal. July 12, 2016) (citing F.T.C. v. Think Achievement Corp., 144 F. Supp. 2d 1013, 1020 (N.D. Ind. 2000) (citing Sec. Exch. Comm. v. Cherif, 933 F.2d 403, 414 & n.11 (7th Cir. 1991)).

Defendant Hsu is the CEO of Relief Defendant MJ Wealth. Pl. Ex. 23, 795. The F.T.C. has provided evidence that the Corporate Defendants have transferred over $2.5 million to MJ Wealth since 2014. Pl. Ex. 25, 1809. In turn, MJ Wealth has transferred over $50,000 back to LCB. Id. at 1810. The F.T.C. has also provided evidence that bank accounts for MJ Wealth show transfers to make payments to Hsu's personal credit cards, payments to Bentley, Mercedes, Porsche, and Tesla, transfers to casinos, and ATM withdrawals. Pl. Ex. 23, 728-29, 1060, 1066, 1074-75, 1082. Given that Hsu controls MJ Wealth, MJ Wealth has not responded to the Motion, and there is no evidence for the assertion that MJ Wealth has a legitimate claim to the funds, the Court finds it likely that the F.T.C. will prevail against MJ Wealth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

      2.      Balance of Equities

"When a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." F.T.C. v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989) (citing F.T.C. v. Warner Communications, Inc., 742 F.2d 1156, 1165 (9th Cir. 1984). Additionally, "the public has a compelling interest in ensuring the robust enforcement of federal consumer protection laws." Alliance, 296 F. Supp. 3d 1197, 1212 (C.D. Cal. Nov. 2, 2017).

Arete and the Arete individuals argue that the private interests of Arete outweigh the public interest because immediately prior to the TRO Arete was an active business focused on consumer debt settlement and not student loans. Opp'n. 49, 23. However, as described above, by its own admission, Arete continues to collect fees from remaining student-loan customers and continues to provide consumers with "recertification services." C. Howe Decl. ¶¶ 5,7. Such fees and services premised on misrepresentations are evidence that there is a continuing harm to consumers and that such practices are ongoing. Thus, the public interest here outweighs Arete and the remaining Defendants' private interests. Accordingly, the balance of equities weighs in favor of granting the preliminary injunction.

      3.      Scope of the Preliminary Injunction

In addition to granting the preliminary injunction, the F.T.C. asks the Court to freeze Defendants' assets, appoint a temporary receiver, and grant immediate access to Defendants' premises. Mot., 25.

The Court has the authority to order ancillary relief such as freezing assets as a result of its inherent equitable power to order consumer redress. See F.T.C. v. H. N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982) ("We hold that Congress, when it gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission, also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference."); see also World Wide Factors, 882 F.2d at 348; F.T.C. v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1432 (11th Cir. 1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

*(A)  Asset Freeze*

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009).  "Courts have frozen individual defendants' assets where the individual defendants controlled the deceptive activity and had actual or constructive knowledge of the deceptive nature of the practices in which they were engaged."  Wealth Educators, Inc., 2015 WL 11439063, at *8. Furthermore, a court may freeze a relief defendant's assets where (1) a person has obtained ill-gotten funds and does not have a legitimate claim to those funds; or (2) where the government can demonstrate that the defendant exercised complete control over the third party.  See SEC v. Cavanaugh, 155 F.3d 129, 136 (2d Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."); SEC v. Hickey, 322 F.3d 1123, 1131-32 (9th Cir. 2003).

The AFS Defendants oppose the portion of the TRO that places a freeze on their assets. Opp'n. 1, 4, 6-7.  Specifically, the AFS Defendants argue that the Seventh Circuit's holding in F.T.C. v. Credit Bureau Center, LLC, prevents the Court from granting the F.T.C.'s request for an asset freeze.  937 F.3d 764, 767 (7th Cir. 2019) (holding that "section 13(b) does not authorize restitutionary relief.").  Arete joins in this argument noting that the Seventh Circuit's decision was premised on Meghrig v. KFC W., Inc., which in part held that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  Opp'n. 2, 20; 516 U.S. 479, 487-88 (1996).  Arete further argues that the Ninth Circuit's holding in Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ), bars the Court from granting an asset freeze here.  632 F.3d 1111, 1121 (9th Cir. 2011).  In Owner-Operator, the Court found that ancillary remedies including restitution and disgorgement were not appropriate as to Truth-in-Lending regulations because the statute confined the court's equitable powers to injunctive relief. Id. ("Unless otherwise provided by statute, the court retains its full equitable powers . . . . In this case, by contrast, the statute has done precisely that; it has provided a different scheme of enforcement, listing only injunctive relief to the exclusion of other equitable remedies. Indeed, it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

others into it." (internal citations and quotations omitted)).

Nonetheless, F.T.C. v. Credit Bureau Center, LLC, is an out of circuit case that does not control here. The Ninth Circuit has "repeatedly held that § 13 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice, including restitution.'" F.T.C. v. AMG Capital Mgmt., LLC, 910 F.3d 417, 426 (9th Cir. 2018) reh'g denied, 2019 U.S. App. LEXIS 18551 (9th Cir. June 20, 2019) (citing F.T.C. v. Commerce Planet, Inc., 815 F.3d 593, 598 (9th Cir. 2016) and F.T.C. v. Pantron I Corp., 33 F.3d 1088, 1102 (9th Cir. 1994)). Based on such precedent, the Court finds that it has the authority to grant an asset freeze here.

Although the AFS Defendants also argue that the F.T.C. has failed to show the requisite evidence as to whether the individuals can be held liable for the deceptive practices, the Court disagrees. See Opp'n., 5; refer to Section III.B.1(D), *supra*. Here, the F.T.C. has provided evidence that Defendants have dissipated their assets given that the Corporate Defendants transferred over five million dollars to offshore banks and entities. Pl. Ex. 25, 1810-11. Furthermore, the Corporate Defendants' bank accounts have been used to pay for the Individual Defendants' cars, travel, personal credit cards, and gambling. Pl. Ex. 23, 1050, 1052, 1097, 1102, 1104; Pl. Ex. 25, 1810. Furthermore, between April 2014 and May 2019, the Corporate Defendants have transferred $10.9 million to the Individual Defendants or the Howe family trust account. Pl. Ex. 25, 1808-10. Such evidence indicates that there is a likelihood that the claimed assets will be dissipated. This is particularly so where the alleged conduct is premised on misrepresentations. Accordingly, the Court finds that an asset freeze is appropriate here as to the Corporate Defendants.

Arete argues that only ten percent of its business and monthly revenue is derived from student loans. C. Howe Decl., ¶ 7. Furthermore, Arete argues that it has a thriving business focused on renegotiating debt settlements on behalf of customers. Palacios Decl., ¶ 3. The appointed receiver has also acknowledged that Arete has shifted its business to consumer debt relief. Hawbecker Decl., Ex. 1. Arete notes that prior to the TRO, Arete was serving approximately 38,000 customer credit accounts on behalf of 7,700 debt settlement clients and employed approximately 150 individuals, 143 of whom work on debt settlement services. Id. at ¶ 4. Arete's debt settlement programs do not charge customers fees in advance. Id. at ¶ 5. Furthermore, student loan customers pay through a different payment system (World Pay and vPay) than do Arete's debt

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

settlement customers (who use Debt Pay Gateway) and are reportedly deposited into a different bank account. C. Howe Decl. ¶ 5, 10; Palacios Decl., ¶ 5. However, the receiver's report identifies transfers of almost $4 million between these accounts during a five month period in 2019. Rec. Reprt., Ex. 27, 2. Additionally, pursuant to the receivership initial accounting records review, "it is not possible to verify the amount of income derived from each of the two business models." Rec. Reprt., Ex. 27, 2. This is because Arete's accounting records were inadequately kept with few transactions entered for 2019 (including no deposit history for nine months). Id. at 2. As such, Arete's accounting records cannot be relied upon. Rec. Reprt., Ex. 27, 1-2.

Furthermore, tracing of assets is not required to determine whether it is appropriate to freeze assets. See Sec. & Exch. Comm'n v. Lee, 2019 WL 4934181, at *6 (S.D. Cal. Oct. 7, 2019) (Explaining that "requests for the release of frozen assets to pay attorney's fees have been denied where the frozen assets fell short of a potential disgorgement order, regardless of whether the funds were tainted (i.e. traceable to illegal activity)."). Here there is credible evidence that Arete has continued their fee collection practice and distributed the proceeds. Furthermore, Defendants face $43 million of joint and several liability. See Pl. Ex. 25, 1808-09 (showing over $43 million in payment processor transactions). Pursuant to the Receiver, "[t]he presently frozen Receivership Entity funds are a mere fraction of the alleged $43 million in consumer harm." Rec. Reprt., 24. Accordingly, the Court finds it appropriate to freeze Arete's assets.

As to the Individual Defendants, as discussed in detail in Section III.B.1(D), *supra*, there is evidence that the Individual Defendants both controlled the Corporate Defendants and had knowledge of or at the very least constructive knowledge of the deceptive practices of the Corporate Defendants. Accordingly, an asset freeze is appropriate here as to all Individual Defendants.

As to Relief Defendant, "[a] person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained." See Sec. & Exch. Comm'n v. World Capital Mkt., Inc., 864 F.3d 996, 1007 (9th Cir. 2017) (citing SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1098). The F.T.C. has provided evidence that MJ Wealth is owned and controlled by Hsu. Pl. Ex. 23, 795. Furthermore, bank accounts for MJ Wealth show transfers to make payments to Hsu's personal credit cards, payments to Bentley, Mercedes, Porsche, and Tesla, transfers to casinos, and ATM withdrawals. Pl. Ex. 23, 728-29, 1060, 1066, 1074-75, 1082.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

Accordingly, the Court finds that an asset freeze is appropriate as to MJ Wealth.

For the foregoing reasons, the Court finds that a freeze to the entirety of the assets of all Defendants is appropriate here.

### (B) Temporary Receiver

"Appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009) (internal citations and quotations omitted). In determining whether appointing a receiver is warranted Courts "often consider the following factors: whether the defendant engaged in fraudulent conduct, whether an imminent danger of loss of property exists, the inadequacy of available legal remedies, and harm to the plaintiff if the request for a receivership is denied." Solis v. Matheson, 563 F.3d 425, 438 (9th Cir. 2009). Nonetheless, no one factor is dispositive and there is no precise formula used to determine if a receiver should be appointed. Canada Life, 563 F.3d at 844.

Here the Court finds that it is appropriate to appoint a receiver given that there is evidence that (1) Defendants have made fraudulent misrepresentations to consumers about their services; and (2) that Defendants operate their business under various names, addresses, and telephone numbers thereby increasing the ease of Defendants to move their property without notice.

### (C) Immediate Access to Premises and Limited Expedited Discovery

The F.T.C. asks that the Court to grant it access to Defendants' business premises and order limited expedited discovery because there is a likelihood that Defendants will "destroy, or render inaccessible, critical evidence." Mot., 29. In support, the F.T.C. notes that Defendants are registered under fictitious business names, that Arete LLC has violated two state orders by marketing debt relief services without a license, and that AFF, 1file.org, and USFFC "have been admonished by other courts for failing to comply with discovery obligations and court orders."[17] Given the risk of continued consumer injury and history of prior conduct, the Court deems it appropriate to grant immediate

---

[17] Mot. 29. See e.g., Pl. Ex. 23, 1399-1402, 1409, 1420, 1422, 1630-32; Pl. Ex. 11, 308; see also, Pl. Ex., 1, 8; Pl. Ex. 23 762-68, 1336, 1432.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-cv-02109 JVS(ADSx) | Date | 11/26/19 |
|---|---|---|---|
| Title | F.T.C. v. American Financial Support Services, Inc. | | |

access to Defendants' business premises, and limited expedited discovery.  See <u>F.T.C. v. Wealth Educators, Inc.</u>, 2015 WL 11439063, at *8 (C.D. Cal. Apr. 6, 2015) (granting expedited discovery and the disabling of defendants' website to prevent consumer injury).

    For the foregoing reasons, the Court **GRANTS** the preliminary injunction, **GRANTS** the request to freeze assets, appoints a receiver, **GRANTS** the request for limited expedited discovery, and **GRANTS** immediate access to Defendants' business premises.

### IV.  CONCLUSION

    For the foregoing reasons, the Court **GRANTS** the motion.

    **IT IS SO ORDERED.**

|  |  | : | 0 |
|---|---|---|---|
|  | Initials of Preparer | lmb/rrp | |