Sanjay Bhandari (SBN 181920)
sbhandari@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:19-cv-02109-JVS (ADSx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION BY RECEIVER FOR ORDER APPROVING AND CONFIRMING SALE OF RECEIVERSHIP ENTITY'S DEBT SETTLEMENT ACCOUNTS** |
| v. | |
| AMERICAN FINANCIAL SUPPORT SERVICES INC., et al., | |
| Defendants, | |
| MJ WEALTH SOLUTIONS, LLC, | JUDGE:   Hon. James V. Selna |
| Relief Defendant. | CTRM:    10C |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Court-appointed receiver, Thomas W. McNamara ("Receiver"), submits this *ex parte* application for approval of the sale of certain receivership assets – specifically the debt settlement accounts of Receivership Entity Arete Financial Group LLC ("Arete") – to New Era Group, Inc. d/b/a New Era Debt Solutions ("New Era") for $1.2 million payable in twelve monthly payments of $100,000 and other terms detailed herein.

In compliance with L.R. 7-19.1, counsel for the Receiver has met and conferred with counsel for the interested parties – Plaintiff Federal Trade Commission ("FTC") and Defendants Carey G. Howe, Ruddy Palacios, Shunmin Hsu, and Oliver Pomazi. Counsel for the FTC stated that the FTC does not oppose the application. Counsel for Defendants Carey G. Howe, Ruddy Palacios, Shunmin Hsu, and Oliver Pomazi will oppose the application and requested two business days to respond. *See* Declaration of Edward Chang ("Chang Declaration") at ¶ 5.

## II.

## THE RECEIVER'S DUTY TO CONTROL AND PRESERVE ASSETS OF RECEIVERSHIP ENTITIES

The Receiver was initially appointed by the Temporary Restraining Order entered November 4, 2019 ("TRO," ECF No. 41 at § XI) and confirmed by the Preliminary Injunction entered December 17, 2019 ("PI," ECF No. 79 at 15).

Both orders direct and authorize the Receiver to "take exclusive custody, control, and possession of all Assets . . . in the possession, custody, or under the control of, any Receivership Entity, wherever situated" and to "conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and

///

perform all acts necessary or advisable to preserve the value of those Assets." TRO § XII.B, D; PI § XII.B, D.

Assets are broadly defined in both orders as "any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held." TRO at 4 (Definitions); PI at 4 (Definitions).

## III.
## ARETE'S DEBT SETTLEMENT BUSINESS

In the Preliminary Report filed November 15, 2019 (ECF No. 57-1), the Receiver reported that in addition to the student debt relief business identified in the TRO, Arete also operated a debt settlement business from the Dyer Road site.

The Receiver concluded that the debt settlement business was a different business than the student loan debt relief business expressly identified in the TRO – hence he made no determination as to the lawfulness of that business under the TRO. He further concluded, however, that the business was so interconnected to, and reliant on the systems and infrastructure at Dyer Road, that Defendants could not be provided access to Dyer Road to continue operations. Finally, he noted that if Arete wished to continue the consumer debt settlement business "sans the Receivership Entities Assets and Documents," the TRO did not appear to prevent them from doing so. *See* Preliminary Report at pages 25-27. Given the asset freeze on all Defendants' assets, however, any such re-launch would require funding from third parties not subject to the asset freeze.

Whether or not the operations violated any of the Prohibited Practices of the TRO and the PI, and whether or not Defendants made any effort to continue that business, the debt settlement business is an asset of Arete:

- The definition of Assets in the PI and TRO includes "any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held." PI at 4 (Definitions); TRO at 4 (Definitions).

- The Court's order granting the PI expressly addressed and rejected the Arete Defendants' argument that the debt settlement business assets should not be frozen: "Furthermore, Defendants face $43 million of joint and several liability. *See* PI, Ex. 25, 1808-09 (showing over $43 million in payment processor transactions). Pursuant to the Receiver, '[t]he presently frozen Receivership Entity funds are a mere fraction of the alleged $43 million in consumer harm.' Accordingly, the Court finds it appropriate to freeze Arete's assets." (ECF No.75, page 17).

The Receiver has a duty to control and preserve the value of the Arete assets so as to maximize estate funds available for consumer redress – and, in this case, protect the Arete debt settlement customers.

As described in the Preliminary Report, customers agreed to pay Arete a percentage of their unsecured debt to be settled on their behalf. Arete entered a contract with Debt Pay Gateway, Inc. ("DPG"), a third-party account management company, to receive, hold, and disburse funds on behalf of Arete's customers. Customers entered separate agreements with DPG, establishing DPG accounts in which they deposited funds to be disbursed to creditors in accordance with debt settlement plans that Arete negotiated on their behalf.

Immediately after entry of the TRO, DPG reported that it had 7,778 accounts holding approximately $5.3 million in customer funds awaiting disbursal to creditors. On or about November 7, 2019, DPG and the FTC agreed that customer funds could be disbursed to fulfill existing settlement agreements with creditors. While this solved part of the problem – funds continued to be disbursed to creditors – customers could not contact their debt settlement relief provider, Arete. As a result, DPG has reported it has received tens of thousands of calls from customers seeking services that a debt settlement relief provider would typically provide. DPG has repeatedly warned that the situation continues to deteriorate,

and customers may be permanently harmed if a new debt settlement company does not take over the accounts immediately. Moreover, DPG has informed us that unless the debt settlement accounts are transferred to a new provider in the very near future, it will terminate all customer accounts and return the funds; this will disrupt customers' debt settlement agreements with creditors, very likely resulting in customers breaching their agreements, and ultimately allowing creditors to proceed against the customers.[1]

DPG continues to hold the fees that are owed to Arete for the period November 4, 2019 to present. Provided the Court approves this application to sell the debt settlement accounts to New Era, the Receiver will seek all Arete's fees due from November 4, 2019 to the entry of the order. Any fees earned after entry of the order will be paid to New Era.

## IV.
## THE PROPOSED SALE

In order to minimize harm to Arete customers, the Receiver has considered a number of paths forward. One possible path was to distribute notices to debt settlement customers to inform them of Arete's closure and return the funds held in the DPG accounts to the customers. After speaking with counsel for DPG, the Receiver determined it was not feasible to send individually tailored notifications to nearly 8,000 customers and that a generic notice would generate consumer confusion and a flood of questions, which neither DPG nor the Receiver are well-suited to answer. Moreover, returning the funds and terminating creditor payments would violate the customer/creditor settlement agreements and subject customers to potential injury, e.g., creditor termination of the settlement agreements and proceeding on stipulated judgments.

---

[1] We understand that customer settlements negotiated by Arete sometimes included stipulated judgments in favor of creditors such that a breach allowed creditors to proceed on the judgments.

After further discussion with DPG's counsel, the Receiver concluded that the solution with the least harm to the customers and maximum return to the Receivership Estate would be to sell Arete's debt settlement accounts to a similar business. A legitimate debt settlement relief business could provide these customers with advice and direction, and work with them to settle and satisfy outstanding creditor obligations. As part of that process, customers would be sent a form notice, informing them of the underlying litigation, the Receiver's appointment, the closure of Arete, and the sale and assignment of the customer accounts to a new provider.

A full synopsis of the Receiver's efforts to sell the consumer debt settlement accounts is set forth in the Declaration of Thomas W. McNamara. In summary, the Receiver contacted reputable counsel and operators in the debt settlement space. After corresponding with more than ten parties about the potential sale of Arete's debt settlement accounts, two offers were received. After evaluating the offers, the Receiver concludes that the offer of $1,200,000 payable in twelve monthly installments of $100,000 from New Era for Arete's debt settlement accounts should be accepted.

The proposed sale of the debt settlement account portfolio will be as-is and with no representations or warranties. New Era will assume the contract(s) between Arete and DebtPayPro and Debt Pay Gateway. The Arete customer agreements will be assigned to New Era and New Era will be entitled to service the accounts should the customers wish to accept their services. The full terms of the sale are detailed in the attached Purchase Agreement. *See* Chang. Decl. at Ex. 2.

New Era has confirmed it will abide by all state and federal laws and that the company is not presently subject to any disciplinary actions or regulatory lawsuits in state or federal court.

///

///

# V.

# CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court authorize and approve the sale of Arete's debt settlement accounts to New Era.

Dated: January 7, 2020             MCNAMARA SMITH LLP

                                   By: /s/ Edward Chang
                                   Edward Chang
                                   *Attorneys for Receiver,*
                                   *Thomas W. McNamara*