Sanjay Bhandari (SBN 181920)
sbhandari@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,
Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:19-cv-02109-JVS (ADSx) |
| Plaintiff, | **DECLARATION OF THOMAS W. MCNAMARA IN SUPPORT OF RECEIVER'S** *EX PARTE* **APPLICATION TO SELL DEBT SETTLEMENT ACCOUNTS** |
| v. | |
| AMERICAN FINANCIAL SUPPORT SERVICES INC., et al., | |
| Defendants, | JUDGE:   Hon. James V. Selna |
| MJ WEALTH SOLUTIONS, LLC, | CTRM:    10C |
| Relief Defendant. | |

I, Thomas W. McNamara, hereby declare as follows:

1. I am the Court-appointed receiver in this matter. I have personal knowledge of the facts set forth in this declaration except where, as noted, those facts have been obtained by staff acting at my direction. If called as a witness, I could and would competently testify to the facts stated herein.

2. By this *Ex Parte* Application, I seek approval to sell the Arete Defendants' debt settlement accounts (the "accounts"). My efforts to sell the accounts are described herein.

3. Once I determined it was in the best interest of the Receivership Estate to sell the accounts, I began reaching out to law firms which represent businesses in the financial services industry. I spoke and/or corresponded with partners at four large and reputable law firms which have debt settlement operators as clients. I explained the basic contours of the Arete debt settlement operation at a high level. Central to all of my communications was an explanation of the exigent nature of the situation which necessitated that a sale be completed in a very short amount of time in order to protect the debt settlement customers. I also stressed our intention to sell the accounts to a reputable debt settlement operator.

4. As a result of my telephones calls and emails with law firm partners, I was put in contact with roughly ten potentially interested parties with whom I then spoke with by telephone. I exchanged emails with several others. In addition, I was also contacted directly by several interested parties and/or their counsel who learned of the Arete situation from outside sources. In all my communications, I provided the basic account information, stressed that time was of the essence and emphasized the necessity that potential purchasers have sound operations as they would be subject to Federal Trade Commission scrutiny. I also made clear that the accounts would be sold as-is and without any representations or warranties.

5. Only a few potential purchasers followed-up on our initial communications. To those who demonstrated continued interest, I forwarded high-

level account portfolio data our forensic accountant was able to gather from Arete's DebtPayPro database. I responded to some follow-up questions about the account portfolio, but did not hear further from most of the parties to whom we sent the data.

6. I received firm offers from two companies, New Era Group, Inc. d/b/a New Era Debt Solutions ("New Era") and Revitafi, Inc. ("Revitafi"). Both companies are debt settlement operators and have long histories of working with DebtPayPro (the customer relationship management software) and Debt Pay Gateway (the third party account management company) used by Arete, as well as the legal insurance plan Arete offered (Veritas Legal Plan). As a result, both assured us they will be able to seamlessly transition the accounts and protect the customers. Both companies stressed, consistent with what we have heard time-and-again from Debt Pay Gateway's counsel, that the sooner the transition occurs the better for customers – as the customers have been without any form of customer service for almost two months and this could result in negative consequences with creditors.

7. While Revitafi made an all-cash offer of $1,250,000, which I accepted in principle, Arete Defendants' counsel later claimed that a senior employee at the company was subject to a California Department of Business Oversight order barring him from employment, management or control of any finance lender or broker. While the bar was not in and of itself disqualifying and the employee's role at the company subject to dispute, I believe Revitafi was not candid with me during the initial discussions and again when I raised the question about the senior employee. As such, I decided not to move forward with Revitafi.

8. After terminating the Revitafi discussions, I contacted interested parties once again, including New Era. New Era submitted its offer within one day. The other parties I contacted have not yet reengaged. New Era has offered to purchase the Arete debt settlement accounts for $1,200,000 payable in twelve

monthly payments of $100,000. I believe the New Era offer is reasonable, particularly in light of the concerns of growing customer harm. As such, I recommend the Court approve New Era's offer to purchase Arete's consumer debt settlement accounts for $1,200,000 on an as-is basis without any representations or warranties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of January 2020, in San Diego, California.

/s/ Thomas W. McNamara
Thomas W. McNamara