STEPHEN T. FAIRCHILD
WA Bar No. 41214; sfairchild@ftc.gov
RICHARD MCKEWEN
WA Bar No. 45041; rmckewen@ftc.gov
FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
Tel.: (206) 220-6350; Fax: (206) 220-6366

ROBERT J. QUIGLEY, Local Counsel
CA Bar No. 302879; rquigley@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel.: (310) 824-4300; Fax: (310) 824-4380

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN FINANCIAL SUPPORT SERVICES INC., et al., <br><br> Defendants. | Civ. No. 8:19-cv-02109-JVS (ADSx) <br><br> **[PROPOSED] ORDER REGARDING DEBT SETTLEMENT OPERATIONS OF DEFENDANT ARETE FINANCIAL GROUP, LLC** |

1. **Preamble.** Defendants Carey Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi (the "Arete Defendants") together hold a controlling interest in Defendant Arete Financial Group, LLC ("Arete"). This Order concerns the interim servicing of certain consumer debt settlement accounts of Arete by the Arete Defendants pending final resolution of the above-captioned matter or other order of this Court.

2. **Definitions.** For the purpose of this Order, the following definitions shall apply:

   a. "Arete" means Defendant Arete Financial Group, LLC.

   b. "Arete Defendants" means Defendants Carey G. Howe, Shunmin "Mike" Hsu, Ruddy Palacios a/k/a Ruddy Barahona, and Oliver Pomazi, individually, collectively, or in any combination.

   c. "Client Trust Account" means the client trust account established at Bienert | Katzman PC.

   d. "CRM" means a customer relationship management database.

   e. "Current Clients" means the consumers who were enrolled in Arete's Debt Settlement Business as of the service of the TRO.

   f. "Debt Settlement Business" means that part of Arete's business that, at the time of service of the TRO, was devoted to consumer debt settlement, and the servicing function of which shall be resumed under this Order.

   g. "Preliminary Injunction" means the Order for Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief (Dkt. 79).

   h. "Receiver" has the same meaning it does in Section XI of the Preliminary Injunction.

ORDER REGARDING DEBT SETTLEMENT OPERATIONS OF DEFENDANT ARETE FINANCIAL GROUP, LLC – 1

        i. "TRO" means the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. 41).

        j. "TSR" means the FTC's Telemarketing Sales Rule, 16 C.F.R. pt. 310.

3. **Servicing.** Upon entry of this Order, the Arete Defendants and Arete may service Arete's Current Clients, and collect all fees paid by the Current Clients through Debt Pay Gateway, Inc. ("Gross Revenues"), provided that all such fees are in compliance with the TSR, and otherwise subject to the provisions listed below.

4. **CRM Databases.** The Receiver is directed to take all necessary and appropriate measures to restore the Arete Defendants' and Arete's access to any CRM databases and other documents and information necessary to service Arete's Current Clients, except that the Arete Defendants and Arete shall not be permitted to access records of consumers related to Defendants' student loan debt relief operations. However, nothing in this order precludes, or is meant to preclude, the Arete Defendants from accessing such records for use in their defense in this litigation.

5. **Websites.** Within three (3) days after entry of this Order, the Receiver shall remove the currently placed notice on the www.aretefinancial.org site. Instead, such notice shall be placed on the website www.aretefinancialfreedom.com. Arete and the Arete Defendants shall not modify content on these websites except to state the following on the website www.aretefinancial.org: "We apologize to any current debt settlement customers of Arete who may have had trouble reaching us during the temporary suspension of our debt settlement operations. We have now resumed servicing our existing debt settlement clients and are available at the number listed below". The Arete Individuals are unsure of the availability of Arete's prior phone number and

therefore may modify the website to reflect any phone number subsequently assigned or available. To the extent that further modification may be necessary to clarify questions consumers may have, the Arete Defendants will meet and confer with the FTC regarding any proposed changes. If the parties cannot agree on any proposed modifications, the Arete Defendants shall seek Court permission prior to modifying these websites.

[The FTC and Arete Defendants disagree as to whether to include a provision unfreezing the assets in an Arete payroll account held at Bank of America. The Arete Defendants' proposal is: "**In order to resume operations, the Arete Individuals wish to engage the services of employees who were working on Arete's Debt Settlement Business upon entry of the TRO.  However, such employees did not receive their wages for the pay period October 16 to 31, 2019 due to the asset freeze imposed by the TRO.  Prior to the entry of the TRO, those wages had been transferred into Arete's Payroll Account at Bank of America ending in -9768  To ensure that those employees are able to be rehired, the Arete Individuals ask that the Court release those funds to pay Arete's employee for work previously performed.  The amount payable to such employees totals approximately $370,000." The FTC opposes this proposal in a separate statement.]

6. **Fees.** On the fifteenth day of each full calendar month after entry of this Order, the Arete Defendants and Arete shall cause twenty-five percent (25%) of the Gross Revenues to be placed in the Client Trust Account, where they shall be subject to the Asset Freeze. If the Court enters this Order prior to February 1, 2020, then 25% of the Gross Revenues collected in January 2020 shall be included in the first deposit into the Client Trust Account by March 15, 2020. Provided, however, that if 25% of Arete's Gross Revenues are less than $100,000 in a given calendar month between the period March  1, 2020 and February 28, 2021, the Arete Defendants and Arete shall nonetheless deposit $100,000 into the Client

Trust Account for that calendar month, except that in no event shall the Arete Defendants use funds frozen by the Asset Freeze as any part of the $100,000.

7. **Accounting, Certification, and Monitoring.** Beginning on March 5, 2020, and at least every thirty (30) days thereafter, the Arete Defendants shall provide the FTC and Receiver, through counsel, with an accounting of Arete's Debt Settlement Business, which shall include, at a minimum, (a) a listing of all assets, with account numbers where available, received, held, transferred, or withdrawn by the Arete Defendants and Arete, including the dates and amounts of funds disbursed by Debt Pay Gateway to Arete; (b) a listing of all expenditures made by Arete; and (c) a calculation and listing of the 25% of Gross Revenues transferred to the Client Trust Account (or, if 25% of Arete's Gross Revenues were less than $100,000 in the preceding calendar month, a listing of the $100,000 transferred to the Client Trust Account and a description of what sources the $100,000 was derived from). Such accounting shall include, but is not limited to, a monthly report issued from Debt Pay Gateway's setting forth all monies paid to Arete. In addition, simultaneously with such accounting, the Arete Defendants and Arete shall file with the Court and serve on all parties a certification, sworn under penalty of perjury, that (a) they caused 25% of the Gross Revenues collected in the preceding month, or $100,000 if 25% of Arete' Gross Revenues were less than $100,000 in the preceding month, to be placed in the Client Trust Account; (b) they have otherwise complied with all provisions of the Order; and that (c) they have otherwise complied with the Preliminary Injunction. Finally, for the purpose of monitoring compliance with this Order, within fourteen (14) days of receipt of a written request from the FTC or the Receiver, any Arete Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; or produce documents for inspection and copying. The FTC and the Receiver are also authorized to obtain discovery to determine compliance with this Order, without further leave of Court,

1  using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30
2  (including telephonic depositions), 31, 33, 34, 36, and 45.
3       The Arete Defendants will submit their own accounting proposal.
4      8.    **Asset Freeze and Third Party Funding.** The Arete Defendants and
5  Arete shall not use any assets subject to the Asset Freeze in the Preliminary
6  Injunction to resume servicing the Current Clients. Furthermore, prior to accepting
7  any capital or funding from a third party or parties, the Arete Defendants must
8  identify such third party(ies) to the Receiver and the FTC, identify the amounts
9  funded and payment terms, and ensure that such third parties are not promised an
10 interest in, or any operational control, of Arete. The Arete Defendants must open
11 new bank accounts to service the debt settlement operations.
12     9.    **[No New Debt Settlement.** The Arete Defendants and the FTC
13 disagree as to whether the Arete Defendants are permitted to market to, sell to,
14 recruit, or otherwise attempt to obtain new debt settlement customers or accounts.
15 The Arete Defendants' position is: "Therefore, the parties request a briefing
16 schedule as to this matter and whether Arete's Debt Settlement business.
17 However, this hearing should not delay Arete's servicing of Current Clients." The
18 FTC's position is that the Arete Defendants and Arete should be expressly
19 restricted to servicing the Current Clients pending further order of this Court or
20 final adjudication of this action.]
21     10.   This Order is intended to remain in effect only for the duration of this
22 action pending a final adjudication on the merits or other order of this Court.
23 Nothing in this Order shall be construed to limit the type or scope of any other
24 relief or final relief that the Court may enter at the conclusion of this action.
25     11.   All other provisions of the Preliminary Injunction, including any
26 modifications ordered by the Court, remain in full force and effect.
27     12.   **Notice.** Within three (3) days after entry of the Order, Arete shall
28 submit to the FTC, for its approval as to content and form, a written notification to

consumers with Debt Settlement Accounts that Arete is resuming servicing of those accounts pending a final adjudication in this matter, and include a copy of the Order with the notification. Such notification must also clearly and conspicuously inform consumers that they may, without penalty, cancel any agreement they have with Arete and withdraw any funds in their custodial debt settlement accounts. Upon receiving the FTC's approval, Arete shall send such notification to consumers with Debt Settlement Accounts within one (1) day.

**IT IS SO ORDERED**

Dated: _____

_____
Hon. James V. Selna
United States District Judge