STEPHEN T. FAIRCHILD
WA Bar No. 41214; sfairchild@ftc.gov
RICHARD MCKEWEN
WA Bar No. 45041; rmckewen@ftc.gov
FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
Tel.: (206) 220-6350; Fax: (206) 220-6366

ROBERT J. QUIGLEY, Local Counsel
CA Bar No. 302879; rquigley@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel.: (310) 824-4300; Fax: (310) 824-4380

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

AMERICAN FINANCIAL SUPPORT
SERVICES INC., et al.,

    Defendants.

Civ. No. 8:19-cv-02109-JVS (ADSx)

**[Proposed] STIPULATED ORDER
FOR PERMANENT INJUNCTION
AND MONETARY JUDGMENT AS
TO DEFENDANTS CAREY G.
HOWE, ANNA C. HOWE,
SHUNMIN HSU, RUDDY
PALACIOS, AND OLIVER
POMAZI**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b.  The Commission and Defendants Carey G. Howe, Anna C. Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi (each a "Stipulating Defendant," and collectively, "Stipulating Defendants") stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Carey G. Howe, Anna C. Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. pt. 310, in the marketing and sale of student loan debt relief services.

3.     Stipulating Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Stipulating Defendants admit the facts necessary to establish jurisdiction.

4.     Stipulating Defendants waive and release any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.  Furthermore, Stipulating Defendants waive and release any claims that they may have against the Commission, the Receiver, and their agents that relate to this action.

5.      Stipulating Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

### DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      **"Assisting Others"** includes:

1.      performing customer service functions, including receiving or responding to consumer complaints;

2.      formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.      formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.      providing names of, or assisting in the generation of, potential customers; or

5.      performing marketing, billing, or payment services of any kind.

B.      "**Debt Relief Product or Service**" means:

1.      With respect to any mortgage, loan, debt, or obligation between a Person and one or more creditors or debt collectors of (a) secured loans or (b) unsecured student loans, any Product or Service represented, expressly or by implication, to:

a.      stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise

1  save a Person's dwelling or other collateral from foreclosure or
2  repossession;
3       b.       negotiate, obtain, or arrange a modification, or renegotiate,
4  settle, or in any way alter any terms of the mortgage, loan, debt, or
5  obligation, including a reduction in the amount of interest, principal
6  balance, monthly payments, or fees owed by a Person to a creditor or
7  debt collector of secured loans or unsecured student loans;
8       c.      obtain any forbearance or modification in the timing of
9  payments from any secured, or unsecured student loan, holder or
10 servicer of any mortgage, loan, debt, or obligation;
11      d.      negotiate, obtain, or arrange any extension of the period of time
12 within which a Person may (i) cure his or her default on the mortgage,
13 loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt,
14 or obligation, (iii) redeem a dwelling or other collateral, or (iv)
15 exercise any right to reinstate the mortgage, loan, debt, or obligation
16 or redeem a dwelling or other collateral;
17      e.      obtain any waiver of an acceleration clause or balloon payment
18 contained in any promissory note or contract secured by any dwelling
19 or other collateral; or
20      f.      negotiate, obtain, or arrange (i) a short sale of a dwelling or
21 other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other
22 disposition of a mortgage, loan, debt, or obligation other than a sale to
23 a third party that is not the secured, or unsecured student loan, holder.
24 The foregoing shall include any manner of claimed assistance, including
25 auditing or examining a Person's application for the mortgage, loan, debt, or
26 obligation.
27 //
28 //

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 3

2.      With respect to any loan, debt, or obligation between a Person and one or more creditors or debt collectors of unsecured student loans, any Product or Service represented, expressly or by implication, to:

    a.      repay one or more unsecured student loans, debts, or obligations; or

    b.      combine unsecured student loans, debts, or obligations into one or more new loans, debts, or obligations.

C.      "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

D.      "**Product or Service**" means any good or service, including any plan or program.

E.      "**Stipulating Defendants**" means Carey G. Howe, Anna C. Howe, Shunmin "Mike" Hsu, Ruddy Palacios a/k/a Ruddy Barahona, and Oliver Pomazi, and any other names by which they might be known, individually, collectively, or in any combination.

## ORDER

### I.      BAN ON DEBT RELIEF PRODUCTS AND SERVICES

IT IS ORDERED that Stipulating Defendants are permanently restrained and enjoined, whether acting directly or through an intermediary, from advertising, marketing, promoting, offering for sale, or selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Debt Relief Product or Service.

### II.      PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Product or Service, are

1  permanently restrained and enjoined from misrepresenting, or Assisting Others in
2  misrepresenting, expressly or by implication:

3  A.      any material aspect of the nature or terms of any refund, cancellation,
4  exchange, or repurchase policy, including the likelihood of a consumer obtaining a
5  full or partial refund, or the circumstances in which a full or partial refund will be
6  granted to the consumer;

7  B.      that any Person is affiliated with, endorsed or approved by, or otherwise
8  connected to any other Person; government entity; public, non-profit, or other non-
9  commercial program; or any other program;

10 C.      the nature, expertise, position, or job title of any Person who provides any
11 Product or Service;

12 D.      that any Person providing a testimonial has purchased, received, or used the
13 Product or Service;

14 E.      that the experience represented in a testimonial of the product, service, plan,
15 or program represents the Person's actual experience resulting from the use of the
16 product, service, plan, or program under the circumstances depicted in the
17 advertisement; or

18 F.      any other fact material to consumers concerning any Product or Service,
19 such as:  the total costs; any material restrictions, limitations, or conditions; or any
20 material aspect of its performance, efficacy, nature, or central characteristics.

21       **III.    PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS**

22       IT IS FURTHER ORDERED that Stipulating Defendants, Stipulating
23 Defendants' officers, agents, employees, and attorneys, and all other Persons in
24 active concert or participation with any of them, who receive actual notice of this
25 Order, whether acting directly or indirectly, in connection with the promoting or
26 offering for sale of any Product or Service, are permanently restrained and
27 enjoined from making any representation or Assisting Others in making any
28 representation, expressly or by implication, about the benefits, performance, or

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 5

efficacy of any Product or Service, unless the representation is non-misleading, including that, at the time such representation is made, they possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## IV.   INJUNCTION RELATING TO TELEMARKETING

IT IS FURTHER ORDERED that Stipulating Defendants, Stipulating Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with telemarketing, advertising, marketing, promoting, offering for sale, or selling of any Product or Service, are hereby permanently restrained and enjoined from:

A.     Misrepresenting, directly or by implication, in the sale of goods or services any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer; and

B.     Violating the FTC's Telemarketing Sales Rule, 16 C.F.R. pt. 310, a copy of which is attached as **Attachment A**.

## V.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of Forty-Three Million Three Hundred Thirty-Seven Thousand Two Hundred Ninety-Two Dollars and Eighty-Three Cents ($43,337,292.83) is entered in favor of the Commission against Stipulating Defendants, jointly and severally, as equitable monetary relief.

B.     In partial satisfaction of the judgment imposed by Subsection A, the Stipulating Defendants are each ordered to pay to the Commission the following amounts:

Carey G. Howe and Anna C. Howe:          $133,496.42

Shunmin Hsu:                                    $43,252.16

Ruddy Palacios:                                 $260,582.00

Oliver Pomazi:                                  $54,505.00

which, as Stipulating Defendants stipulate, their undersigned counsel will hold in escrow for no purpose other than payment to the Commission. In addition, Stipulating Defendants shall cause to be paid to the Commission all funds held in their counsel's client trust account pursuant to the Court's order of January 27, 2020 (Doc. 116). Such payments must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of the Commission. Upon such payments and, if applicable, all additional payments, asset transfers, and delivery of proof of deeds of trust pursuant to Subsection C below, the remainder of the judgment is suspended, subject to the Subsections below.

C.      In addition to making the payments required by Subsection B, the following Stipulating Defendants shall make an additional deferred payment in the amounts listed below. To secure the deferred payments, the Stipulating Defendants hereby grant the FTC a lien and security interest in the real property indicated:

- Carey G. Howe and Anna C. Howe: $80,302.00 (8282 Valencia Drive, Huntington Beach, California 92647)
- Shunmin Hsu: $237,840.76 (12602 Barrett Lane, North Tustin, California 92705)
- Ruddy Palacios: $24,958.29 (1912 Alcor Street, Lomita, California 90717)

Within thirty (30) days of entry of this Order, each of these Stipulating Defendants shall either record and deliver to the FTC a deed of trust in the real property in the amount indicated, or pay the FTC the full amount of the deferred payment. Any Stipulating Defendant who records and delivers to the FTC a deed of trust must

1   pay the FTC the full amount of the deferred payment no later than one-hundred

2   eighty (180) days following entry of this Order.

3       Each Stipulating Defendant represents and acknowledges that, as to that

4   Stipulating Defendant's above-listed property, the FTC is relying on the material

5   representations that the Stipulating Defendant is the sole owner of the property or

6   is otherwise empowered to obtain a voluntary lien and deed of trust thereon; title to

7   the property is marketable; and the property is not encumbered by any other lien,

8   mortgage, deed of trust, assignment, pledge, security interest, or other interest not

9   identified in the Financial Attestations listed in Subsection D below.  Stipulating

10  Defendants shall maintain in good working order, keep in the same condition,

11  cause existing insurance coverage for the property to remain in force, and take no

12  action to diminish the value of the property, including any structures, fixtures, and

13  appurtenances thereto, as of the date Stipulating Defendants executed their

14  Financial Attestations listing the value of such property.  Stipulating Defendants

15  shall be responsible for paying all fees, costs, or other expenses related to

16  recording the voluntary lien and deed of trust described above.

17      Within ten (10) days of the full payment of a Stipulating Defendant's

18  payment obligation under this Subsection C, the FTC will execute and deliver to

19  such Stipulating Defendant a fully executed conveyance releasing the FTC's lien

20  and security interest in the subject property, which upon the Stipulating

21  Defendant's receipt may be immediately perfected by recordation.

22  D.   In the event that any Stipulating Defendant fails to make a required payment

23  when due under Subsection B or C, the entire judgment amount, less any amount

24  previously paid, shall immediately become due and payable by that Stipulating

25  Defendant.  Interest computed at the rate prescribed under 28 U.S.C. § 1961, as

26  amended, shall immediately begin to accrue on the unpaid balance. Time is of the

27  essence for the payments specified in this Section.

28

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 8

E.     The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "Financial Attestations") submitted to the Commission or attached to this Order, namely:

1.     the Financial Statement of Individual Defendant Carey G. Howe signed on November 16, 2019;

2.     the Addendum to Carey G. Howe's Individual Financial Disclosure Form signed on February 14, 2020, including the additional items;

3.     the Second Addendum to Carey G. Howe's Individual Financial Disclosure Form signed on March 19, 2020, including the attachments;

4.     the Third Addendum to Cary G. Howe's Individual Financial Disclosure Form signed on July 1, 2020;

5.     the Declaration of Carey G. Howe executed on July 24, 2020;

6.     the Declaration of Anna C. Howe executed on July 21, 2020;

7.     the Financial Statement of Individual Defendant Shunmin Hsu signed on November 17, 2019, including the attachments;

8.     the Addendum to Shunmin Hsu's Financial Disclosure Form signed on February 12, 2020, including the additional items;

9.     the Second Addendum to Shunmin Hsu's Financial Disclosure Form signed on July 2, 2020;

10.     the Declaration of Shunmin Hsu executed on July 23, 2020;

11.     the Financial Statement of Individual Defendant Ruddy Palacios signed on November 18, 2019, including the attachments;

12.     the Addendum to Ruddy Palacios's Financial Disclosure Form signed on February 13, 2020, including the additional items;

13.     the Second Addendum to Ruddy Palacios's Financial Disclosure form signed on June 30, 2020;

14.     the Payoff Statement for Ruddy Palacios dated June 11, 2020;

15.     the Declaration of Ruddy Palacios executed on July 24, 2020;

16.     the Financial Statement of Individual Defendant Oliver Pomazi signed on November 15, 2019;

17.     the Addendum to Oliver Pomazi's Financial Disclosure Form signed on February 12, 2020, including the additional items; and

18.     the Second Addendum to Oliver Pomazi's Financial Disclosure Form signed on July 2, 2020.

F.     The suspension of the judgment will be lifted as to any Stipulating Defendant if, upon motion by the Commission, the Court finds that Stipulating Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the Financial Attestations identified above.

G.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Stipulating Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## VI.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.     Stipulating Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary

judgment pursuant to this Order, such as a nondischargeability complaint in any
bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain
an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy
Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect
for such purposes.

D.     Stipulating Defendants acknowledge that their Taxpayer Identification
Numbers (Social Security Numbers or Employer Identification Numbers), which
Stipulating Defendants previously submitted to the Commission, may be used for
collecting and reporting on any delinquent amount arising out of this Order, in
accordance with 31 U.S.C. § 7701.

E.     All money paid to the Commission pursuant to this Order may be deposited
into a fund administered by the Commission or its designee to be used for
equitable relief, including consumer redress and any attendant expenses for the
administration of any redress fund.  If a representative of the Commission decides
that direct redress to consumers is wholly or partially impracticable or money
remains after redress is completed, the Commission may apply any remaining
money for such other equitable relief (including consumer information remedies)
as it determines to be reasonably related to Defendants' practices alleged in the
Complaint.  Any money not used for such equitable relief is to be deposited to the
U.S. Treasury as disgorgement.  Stipulating Defendants have no right to challenge
any actions the Commission or its representatives may take pursuant to this
Subsection.

F.     The asset freeze imposed by the preliminary injunction order entered on
December 17, 2019 (Doc. 79), is modified to permit the payments identified in
Section V.B–C.  The asset freeze shall otherwise remain in full force and effect
until the completion of all such payments, after which the asset freeze shall be
dissolved as to the Stipulating Defendants.

G.     Upon completion of all payments identified in Section V.B–C, the Court's order of January 27, 2020, is dissolved.

## VII.  CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Product or Service, are permanently restrained and enjoined from directly or indirectly:

A.     failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Stipulating Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.     disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the sale and marketing of student loan debt relief services; and

C.     failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

//
//
//

## VIII.  COOPERATION

IT IS FURTHER ORDERED that Stipulating Defendants must fully cooperate with representatives of the Commission and the Receiver in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Stipulating Defendants must provide truthful and complete information, evidence, and testimony.  Stipulating Defendants must appear and cause their employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission or Receiver's representative may reasonably request upon five (5) days written notice, or other reasonable notice, at such places and times as a Commission or Receiver's representative may designate, without the service of a subpoena.

## IX.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Stipulating Defendants obtain acknowledgments of receipt of this Order:

A.     Each Stipulating Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury, in the form attached to this Order.

B.     For 15 years after entry of this Order, each Stipulating Defendant for any business that such Stipulating Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for the conduct specified in Section IV and all agents and representatives who participate in the conduct specified in Section IV; (3) any payment processor or lead broker or generator used by the business; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI – 13

personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Stipulating Defendant delivered a copy of this Order, that Stipulating Defendant must obtain and deliver to the Commission, within 30 days, a signed and dated acknowledgment of receipt of this Order, in the form attached to this Order.

## X.     COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Stipulating Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Stipulating Defendant must submit a compliance report, sworn under penalty of perjury.  In the compliance report, each Individual Defendant must:

1.     identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Defendant;

2.     identify all business activities, including any business for which such Stipulating Defendant performs services whether as an employee or otherwise and any entity in which such Stipulating Defendant has any ownership interest, including the names, telephone numbers, and physical, postal, email, and Internet addresses of all such businesses;

3.     describe in detail the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Stipulating Defendants must describe if they know or should know due to their own involvement)

3.     describe in detail such Stipulating Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI – 14

4.      describe in detail whether and how that Stipulating Defendant is in compliance with each Section of this Order; and

5.      provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 15 years after entry of this Order, each Stipulating Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Stipulating Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Stipulating Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Stipulating Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Stipulating Defendant performs services whether as an employee or otherwise and any entity in which such Stipulating Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Stipulating Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Stipulating Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI – 15

\_\_\_\_\_" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  *FTC v. American Financial Support Services Inc., et al.*, X200005.

## XI.    RECORDKEEPING

IT IS FURTHER ORDERED that Stipulating Defendants must create certain records for 15 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Stipulating Defendant for any business that such Stipulating Defendant, individually or collectively with any other Defendants, is a majority owner of or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a listing of all payment processors and lead brokers or generators used in the conduct of the business.

//

//

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI – 16

## XII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Stipulating Defendants' compliance with this Order, including the Financial Attestations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Stipulating Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Stipulating Defendant.  Such Stipulating Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Stipulating Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Stipulating Defendants or any individual or entity affiliated with Stipulating Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Stipulating Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

//

### XIII.  DISPOSITION OF APPEALS

IT IS FURTHER ORDERED that, within three (3) business days after entry of this Order, Stipulating Defendants shall move to dismiss, with prejudice and without seeking attorney's fees and costs, their appeals in the Ninth Circuit Court of Appeals arising from this Court's entry of a Preliminary Injunction, Ninth Circuit Case Nos. 20-55091 and 20-55092.

### XIV.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 18

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

Date: 9/9/2020

Stephen T. Fairchild, Attorney
Richard McKewen, Attorney
Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA 98174
(206) 220-4476 (Fairchild)
(206) 220-4595 (McKewen)
(206) 220-6366 (fax)
sfairchild@ftc.gov
rmckewen@ftc.gov

**FOR DEFENDANTS CAREY G. HOWE, SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA, and OLIVER POMAZI:**

Date: 7-21-2020

Ariana Seldman Hawbecker
Bienert | Katzman PC
903 Calle Amanecer
San Clemente, CA 92673
(949) 369-3700 (phone)
(949) 369-3701 (fax)
ahawbecker@bienertkatzman.com

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI – 19

**STIPULATING DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA, and OLIVER POMAZI:**

_____     Date:  7·22·2020
Carey G. Howe, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; CBC Conglomerate LLC; and La
Casa Bonita Investments, Inc.

_____     Date: _____
Anna C. Howe, *pro se*, individually and as an
officer of CBC Conglomerate LLC

_____     Date: _____
Shunmin "Mike" Hsu, individually and as an
officer of Arete Financial Group; Arete
Financial Group LLC; CBC Conglomerate
LLC; and La Casa Bonita Investments, Inc.

_____     Date: _____
Ruddy Palacios a/k/a Ruddy Barahona,
individually and as an officer of Arete
Financial Group; Arete Financial Group LLC;
and Diamond Choice Inc.

_____     Date: _____
Oliver Pomazi, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; and J&L Enterprise LLC

**STIPULATING DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA, and OLIVER POMAZI:**

_____     Date: _____
Carey G. Howe, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; CBC Conglomerate LLC; and La
Casa Bonita Investments, Inc.

_____     Date: 7/21/20
Anna C. Howe, *pro se*, individually and as an
officer of CBC Conglomerate LLC

_____     Date: _____
Shunmin "Mike" Hsu, individually and as an
officer of Arete Financial Group; Arete
Financial Group LLC; CBC Conglomerate
LLC; and La Casa Bonita Investments, Inc.

_____     Date: _____
Ruddy Palacios a/k/a Ruddy Barahona,
individually and as an officer of Arete
Financial Group; Arete Financial Group LLC;
and Diamond Choice Inc.

_____     Date: _____
Oliver Pomazi, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; and J&L Enterprise LLC

1   **STIPULATING DEFENDANTS CAREY G. HOWE, ANNA C. HOWE,**
2   **SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA,**
    **and OLIVER POMAZI:**
3

4

5                                                          Date: _____
6   Carey G. Howe, individually and as an officer
7   of Arete Financial Group; Arete Financial
    Group LLC; CBC Conglomerate LLC; and La
8   Casa Bonita Investments, Inc.
9

10                                                         Date: _____
11  Anna C. Howe, *pro se*, individually and as an
    officer of CBC Conglomerate LLC
12

13
14                                                         Date:   07/21/20
    Shunmin "Mike" Hsu, individually and as an
15  officer of Arete Financial Group; Arete
16  Financial Group LLC; CBC Conglomerate
    LLC; and La Casa Bonita Investments, Inc.
17

18
19                                                         Date: _____
    Ruddy Palacios a/k/a Ruddy Barahona,
20  individually and as an officer of Arete
21  Financial Group; Arete Financial Group LLC;
    and Diamond Choice Inc.
22

23
24                                                         Date: _____
    Oliver Pomazi, individually and as an officer
25  of Arete Financial Group; Arete Financial
26  Group LLC; and J&L Enterprise LLC
27

28

    STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
    DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
    AND OLIVER POMAZI – 20

1   **STIPULATING DEFENDANTS CAREY G. HOWE, ANNA C. HOWE,**
2   **SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA,**
    **and OLIVER POMAZI:**
3

4

5   _____          Date: _____
6   Carey G. Howe, individually and as an officer
7   of Arete Financial Group; Arete Financial
    Group LLC; CBC Conglomerate LLC; and La
8   Casa Bonita Investments, Inc.
9

10  _____          Date: _____
11  Anna C. Howe, *pro se*, individually and as an
    officer of CBC Conglomerate LLC
12

13
                                             Date: _____
14  _____
    Shunmin "Mike" Hsu, individually and as an
15  officer of Arete Financial Group; Arete
16  Financial Group LLC; CBC Conglomerate
    LLC; and La Casa Bonita Investments, Inc.
17

18
                                             Date: 7/22/20
19  _____
    Ruddy Palacios a/k/a Ruddy Barahona,
20  individually and as an officer of Arete
    Financial Group; Arete Financial Group LLC;
21  and Diamond Choice Inc.
22

23
                                             Date: _____
24  _____
    Oliver Pomazi, individually and as an officer
25  of Arete Financial Group; Arete Financial
26  Group LLC; and J&L Enterprise LLC
27

28

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 20

**STIPULATING DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN "MIKE" HSU, RUDDY PALACIOS a/k/a RUDDY BARAHONA, and OLIVER POMAZI:**

_____     Date: _____
Carey G. Howe, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; CBC Conglomerate LLC; and La
Casa Bonita Investments, Inc.

_____     Date: _____
Anna C. Howe, *pro se*, individually and as an
officer of CBC Conglomerate LLC

_____     Date: _____
Shunmin "Mike" Hsu, individually and as an
officer of Arete Financial Group; Arete
Financial Group LLC; CBC Conglomerate
LLC; and La Casa Bonita Investments, Inc.

_____     Date: _____
Ruddy Palacios a/k/a Ruddy Barahona,
individually and as an officer of Arete
Financial Group; Arete Financial Group LLC;
and Diamond Choice Inc.

_____     Date: 7/21/20
Oliver Pomazi, individually and as an officer
of Arete Financial Group; Arete Financial
Group LLC; and J&L Enterprise LLC

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO
DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS,
AND OLIVER POMAZI – 20

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Civ. No. 8:19-cv-02109-JVS (ADSx) |
| Plaintiff, | |
| v. | **ACKNOWLEDGEMENT BY AFFIDAVIT OF RECEIPT OF ORDER BY DEFENDANT** |
| AMERICAN FINANCIAL SUPPORT SERVICES INC., et al., | |
| Defendants. | |

1.     My name is _____.  I am a U.S. citizen over the age of eighteen, and I have personal knowledge of the facts set forth in this Acknowledgement.

2.     I was a Defendant in *Federal Trade Commission v. American Financial Support Services Inc., et al.*, which is the court case listed near the top of this page.

3.     On _____, 2020, I received a copy of the Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Carey G. Howe, Anna C. Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi, which was signed by the Honorable James V. Selna and entered by the Court on _____, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on _____, 2020, at _____.

_____
[Defendant]

State of _____, City of _____

Subscribed and sworn to before me
this _____ day of _____, 20__.


_____
Notary Public

My commission expires:
_____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

           Plaintiff,

           v.

AMERICAN FINANCIAL SUPPORT
SERVICES INC., et al.,

           Defendants.

Civ. No. 8:19-cv-02109-JVS (ADSx)

**ACKNOWLEDGEMENT BY
DECLARATION OF RECEIPT OF
ORDER BY A NON-PARTY**

1.    I, _____, received a copy of the Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Carey G. Howe, Anna C. Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi in the case of *Federal Trade Commission v. American Financial Support Services Inc., et al.*, on _____, 20___.

2.    I was not a Defendant in that court case.  My title or relationship with Defendant(s) _____ is:

_____.

3.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 20___, at _____ [place].

                                      Signed:

                                      _____

# ATTACHMENT A

ELECTRONIC CODE OF FEDERAL REGULATIONS

## e-CFR data is current as of July 16, 2020

Title 16 → Chapter I → Subchapter C → Part 310

Title 16: Commercial Practices

## PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

**Contents**

§310.1   Scope of regulations in this part.
§310.2   Definitions.
§310.3   Deceptive telemarketing acts or practices.
§310.4   Abusive telemarketing acts or practices.
§310.5   Recordkeeping requirements.
§310.6   Exemptions.
§310.7   Actions by states and private persons.
§310.8   Fee for access to the National Do Not Call Registry.
§310.9   Severability.

AUTHORITY: 15 U.S.C. 6101-6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

## §310.1   Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

## §310.2   Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 1

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Cash-to-cash money transfer* means the electronic (as defined in section 106 (2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) transfer of the value of cash received from one person to another person in a different location that is sent by a money transfer provider and received in the form of cash. For purposes of this definition, *money transfer provider* means any person or financial institution that provides cash-to-cash money transfers for a person in the normal course of its business, whether or not the person holds an account with such person or financial institution. The term *cash-to-cash money transfer* includes a remittance transfer, as defined in section 919(g)(2) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. 1693a, that is a cash-to-cash transaction; however it does not include any transaction that is:

(1) An electronic fund transfer as defined in section 903 of the EFTA;

(2) Covered by Regulation E, 12 CFR 1005.20, pertaining to gift cards; or

(3) Subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*

(g) *Cash reload mechanism* is a device, authorization code, personal identification number, or other security measure that makes it possible for a person to convert cash into an electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) form that can be used to add funds to a general-use prepaid card, as defined in Regulation E, 12 CFR 1005.2, or an account with a payment intermediary. For purposes of this definition, a cash reload mechanism is not itself a general-use prepaid debit card or a swipe reload process or similar method in which funds are added directly onto a person's own general-use prepaid card or account with a payment intermediary.

(h) *Charitable contribution* means any donation or gift of money or any other thing of value.

(i) *Commission* means the Federal Trade Commission.

(j) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(k) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(l) *Credit card sales draft* means any record or evidence of a credit card transaction.

(m) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(n) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(o) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(p) *Donor* means any person solicited to make a charitable contribution.

(q) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(r) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(s) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 3

(t) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(u) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(v) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(w) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(x) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(y) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(z) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(aa) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(bb) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(cc) *Remotely created payment order* means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a "remotely created check," as defined in Regulation CC, Availability of Funds and Collection of Checks, 12 CFR 229.2(fff), but does not

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 4

include a payment order cleared through an Automated Clearinghouse (ACH) Network or subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR part 1026.

(dd) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(ee) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(ff) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(gg) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(hh) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77557, Dec. 14, 2015]

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 5

**§310.3   Deceptive telemarketing acts or practices.**

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay[659] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before the consumer enrolls in an offered program.

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[660]

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the

customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 7

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

[661] Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.,* and Regulation E, 12 CFR part 205.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 8

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) An accurate description, clearly and conspicuously stated, of the goods or services or charitable contribution for which payment authorization is sought;

(B) The number of debits, charges, or payments (if more than one);

(C) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(D) The amount(s) of the debit(s), charge(s), or payment(s);

(E) The customer's or donor's name;

(F) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(G) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(H) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 9

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 10

charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77558, Dec. 14, 2015]

## §310.4   Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 11

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(*1*) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(*2*) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in §310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 12

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section;

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 13

organization's customer or donor service telephone number, which is answered during regular business hours;

(9) Creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing; or

(10) Accepting from a customer or donor, directly or indirectly, a cash-to-cash money transfer or cash reload mechanism as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:

(*1*) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a

specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[664] of that person; or

[664]For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 15

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii) (B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 16

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 17

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 18

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011; 80 FR 77559, Dec. 14, 2015]

## §310.5   Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with §310.5(a)(3) of this Rule.

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by §310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by §310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 19

agreement exists, the seller shall be responsible for complying with §§310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with §310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

## §310.6   Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided,* however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided,* however, that this exemption does not apply to:

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 20

(i) Calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1), for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) for any requested charitable contribution; *provided,* however, that this exemption does not apply to:

(i) Calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business to induce the purchase of goods or services or a charitable contribution by the business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided,* however, that §§310.4(b)(1)(iii)(B) and 310.5 shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77559, Dec. 14, 2015]

## §310.7   Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 21

20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

### §310.8   Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $65 for each area code of data accessed, up to a maximum of $17,765; *provided,* however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further,* that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. No person may participate in any arrangement to share the cost of accessing the National Do Not Call Registry, including any arrangement with any telemarketer or service provider to divide the

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU, RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 22

costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in paragraph (c) of this section, each person excepted under paragraph (c) from paying the annual fee, and each person excepted from paying an annual fee under §310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $65 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $32 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013; 79 FR 51478, Aug. 29, 2014; 80 FR 77560, Dec. 14, 2016; 81 FR 59845, Aug. 31, 2016; 82 FR 39534, Aug. 21, 2017; 83 FR 46640, Sept. 14, 2018; 84 FR 44687, Aug. 27, 2019]


## §310.9  Severability.

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO DEFENDANTS CAREY G. HOWE, ANNA C. HOWE, SHUNMIN HSU,
RUDDY PALACIOS, AND OLIVER POMAZI

Attachment A - page 23

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2020, I caused the following documents to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users:

- [Proposed] Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Carey G. Howe, Anna C. Howe, Shunmin Hsu, Ruddy Palacios, and Oliver Pomazi

I further certify that I caused the foregoing documents to be delivered to the following, in the manner indicated:

Anna Howe
annahowe2014@gmail.com
*via email*

Respectfully submitted,

Dated:  September 9, 2020

/s/ Stephen T. Fairchild
Stephen T. Fairchild
Attorney for Plaintiff
FEDERAL TRADE COMMISSION