Sanjay Bhandari (SBN 181920)
sbhandari@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1680
San Diego, California 92101
Telephone: 619-269-0400
Facsimile: 619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:19-cv-02109-JWH (ADSx) |
| Plaintiff, | **RECEIVER'S INTERIM STATUS REPORT** |
| v. | JUDGE:   Hon. John W. Holcomb |
| AMERICAN FINANCIAL SUPPORT SERVICES INC., et al., | CTRM:   2 |
| Defendants, | |
| MJ WEALTH SOLUTIONS, LLC, | |
| Relief Defendant. | |

Thomas W. McNamara, as Court-appointed receiver ("Receiver"), submits this report of receivership activities for the period of November 15, 2019 to November 10, 2020.

## I.

## INTRODUCTION

On November 4, 2019, this court entered a Temporary Restraining Order (ECF No. 41) ("TRO") and appointed Thomas W. McNamara as temporary receiver for the Receivership Entities.[1]  Defendants used the Receivership Entities

---

[1] Receivership Entities are defined in the TRO to mean Corporate Defendants, "as well as any other entity that has conducted any business related to Defendants' marketing and sales of Debt Relief Services, including receipt of Assets derived

to operate two discrete businesses: a student loan debt relief business, which Defendants began in 2014, and a consumer debt settlement business, which became the focus of their operations beginning in July 2019. *See* ECF No. 57-1 at 1-2. Though both businesses operated out of the same locations, the express terms of the TRO were limited to the student loan debt relief business. *See id.* at 2. Consequently, the Receiver neither assumed control over the debt settlement business, nor made any determination as to its lawfulness. *Id.* He did feel compelled, however, to maintain exclusive control over the business locations in order to protect the Documents and Assets of the Receivership Entities, especially since the student loan business was still running (albeit in a diminished capacity).[2] *Id.*

The Receiver's Preliminary Report (ECF No. 57), which was filed on November 14, 2019, focused on the student loan debt relief business. Individual Defendants Ruddy Palacios, Carey Howe, and Shunmin "Mike" Hsu claimed that

_____

from any activity that is the subject of the Complaint in this matter, and that Receiver determines is controlled or owned by any Defendant." *See* TRO, Definitions, page 6, ¶ K. Corporate Defendants are defined to mean American Financial Support Services, Inc; Arete Financial Group, also d/b/a Arete Financial Freedom; Arete Financial Group LLC; CBC Conglomerate LLC, also d/b/a 1file.org; Diamond Choice Inc, also d/b/a Interest Rate Solutions; J&L Enterprise LLC, also d/b/a Premier Solutions Servicing; La Casa Bonita Investments, Inc., f/k/a La Casa Bonita Investments LLC, also d/b/a Education Loan Network, also d/b/a Edunet; US Financial Freedom Center, Inc; and each of their subsidiaries, affiliates, successors, and assigns. *See* TRO, Definitions, page 3, ¶ B.

Pursuant to the procedure in TRO Section XII.U, the Receiver has designated the following entities to be additional Receivership Entities based on his determination that they have received Assets derived from Defendants' student loan debt relief business and are controlled or owned by a Defendant: AZ Marketing and Management Group, Fusion Graphics, Summit Holding Group Inc., FNZA Marketing, LLC, d/b/a Student Loan Pro, and Quick Student Loan Solution.

[2] As the Receiver noted in his Preliminary Report, Individual Defendant Carey Howe filed a declaration claiming Arete wound down its student loan business in April 2019. *See* ECF No. 57-1 at 2 n.2. However, the business records showed that between April 1, 2019 and the Receiver's immediate access on November 6, 2019, Arete alone took in $2,447,000 in student loan debt relief collections; adding the amounts collected by Receivership Entities Premier Solutions Servicing and 1file.org, the entities took in an aggregate $5.5 million in student loan customer fees. *See id.*

new student loan debt relief enrollments had ceased around July 2019, but admitted that they continued to charge monthly recertification fees (*i.e.*, unlawful advance fees) for existing student loan debt relief customers. *Id.* at 1-2.  The Receiver's preliminary investigation indicated that Defendants had made a deliberate push to separate Arete from the student loan debt relief business throughout the summer of 2019, and that by July 2019, student loan activity was primarily limited to recertifications for existing customers.  *Id.* at 4.

Elements of the student loan business lingered, however, even setting aside the recertifications.  At Defendants' Bolsa Avenue location, 1file.org was processing student loan business generated by an Indian call room under contract with two entities owned by Individual Defendant Jay Singh – American Financial Support Services, Inc. ("American Financial") and US Financial Freedom Center, Inc. ("US Financial") – with Arete covering the cost of consumer refunds.  *See id.* at 6-7.  At Defendants' Sky Park location, Syed Gilani (one of Arete's co-owners) ran his student loan business, "Student Loan Pro," which was selling and processing student loan services while receiving substantial funding from Arete. *See id.* at 7.

After the Preliminary Report was filed, the Receiver's appointment was confirmed, and the temporary designation removed, by the Order for Preliminary Injunction entered on December 17, 2019 (ECF No. 79).  Since the entry of the Preliminary Injunction, the Receiver's primary focus has been on winding down the business, preserving and storing documents, vacating the office space, addressing outstanding issues, liquidating Receivership assets, and coordinating with the parties as needed.

///

///

///

///

## II.

## RECEIVERSHIP ACTIVITIES

### A.    Immediate Access and Receivership Locations

Following the entry of the TRO, the Receiver moved quickly to effect its mandate that he "take all steps necessary to secure and take exclusive custody" of the locations from which Defendants operated their business: 1261 East Dyer Road, Suites 100, 200, and 250, Santa Ana, CA ("Dyer"); 5772 Bolsa Avenue, Suite 220, Huntington Beach, CA ("Bolsa"); 18001 Sky Park Circle, Suites L-M, Irvine, CA ("Sky Park"); and 500 Ygnacio Valley Road, Suite 430, Walnut Creek, CA ("Ygnacio").  *See* ECF No. 41 (TRO) at 16-17.  The Receiver changed the locks and secured the premises.

After securing the sites, the Receiver moved to wind down operations and minimize costs to the Receivership Estate.  The TRO and PI directed and authorized the Receiver to "conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets."  PI § XII.D.  Accordingly, on December 23, 2019, the Receiver asked the Court to enter an order authorizing him to liquidate or abandon Receivership Estate assets, vacate the leased premises, and return any leased vehicles to the lessors.  *See* ECF No. 83.  The Court granted the Receiver's application, and with the Court's authorization, the Receiver proceeded to take the following actions:

- Conduct a thorough investigation of the documents on site, and provide access to counsel and other representatives of the FTC for similar review.
- Preserve all business records, including hard copy documents and electronic materials (*i.e.*, hard drives, servers, etc.) which were originally located at the Receivership sites by relocating them to a secure storage site controlled by the Receiver.

- Preserve any electronic materials stored offsite or in the cloud (most notably the RingCentral call recordings).
- Retain a document destruction company to destroy the documents located in the shred bins.
- Contact a number of liquidation and estate sale companies, before accepting one liquidator's offer to pay $5,000 for the electronics and furniture and to remove the cubicles and any trash.[3]
- Once the premises were clear, vacate the four Receivership sites and return the premises to the respective landlords.

The Receiver worked diligently to clear the Receivership sites, but the size of the sites and the volume of documents stored on the premises delayed the Receiver's exit.  The properties were vacated and the keys were returned to the landlords on the following dates: Ygnacio on January 7, 2020; Bolsa on January 21, 2020; and Dyer and Sky Park on January 22, 2020.

**B.    Return of Leased Vehicles**

The Receiver determined that all of the vehicles in Receivership Entities' names were leased as opposed to owned.  The Court authorized the Receiver to return any leased vehicles in which there was no equity, including, but not limited to, (i) a 2020 BMW 750i, (ii) a 2019 Lamborghini Urus, (iii) a 2018 Mercedes G63, (iv) a 2019 Rolls Royce Cullinan, (v) a 2018 Toyota RAV4 (black), and (vi) a 2018 Toyota RAV4 (white).  The Receiver had the vehicles returned to their respective lessors.

///

---

[3] Most of the companies contacted by the Receiver determined that the cost and time to remove the cubicles and office furniture outweighed the benefit of the electronics onsite.  Based on his discussions with the various companies, the Receiver determined that the offer which he ultimately accepted was the best option.  *See* ECF No. 90 at 2 (authorizing the Receiver to "abandon Assets of the Receivership Entities that cannot be profitably liquidated for the benefit of the receivership estate.").  The exact property present at each of the sites is discussed in greater detail in the Receiver's *ex parte* application.  *See* ECF No. 83.

C.     **Notice to Consumers**

1.     Notice Regarding the Case

The Receiver took a number of steps to provide notice to consumers of the action and to update them at periodic intervals.  The Receiver sent consumers updates by email, responded to numerous consumer inquiries (by phone and by email), posted notices on the Receivership Entities' websites, and updated the Receivership Entities' telephone greetings to relay the status of the case.  The Receiver's notices provided information about the case and instructed consumers to contact their student loan servicers immediately.  The Receiver has also created and hosted a website that consumers can visit to review relevant court documents and updates pertaining to the case.

2.     Notice Regarding a Potential Scam

The Receiver's office recently received a disturbing report from a consumer who had used Defendant American Financial's student loan debt relief services. The consumer was contacted by an individual purportedly offering a refund of money she had previously paid to American Financial.  The individual claimed that in order to refund the money, the consumer would need to fill out an online form and provide banking information.  The individual had a heavy accent, sounded as if he was calling from a call center, and had access to the consumer's personal information (which she had provided to American Financial).  The consumer declined the request to fill out the online form.[4]  Because it appeared that the telemarketer had access to consumer information provided to Defendant American Financial, the Receiver prepared and sent a global email to consumers regarding

---

[4] As reported in the Receiver's Preliminary Report, Defendant Jay Singh ran "the student loan debt relief business of American Financial and US Financial [Freedom Center] by contracting with offshore Indian call rooms to secure customers for student loan relief."  ECF No. 57-1 at 15.  The Receiver has no reason to suspect Defendant Singh's involvement, but it seems possible that the call room(s) used by Singh/American Financial/US Financial had access to consumers' personal information and are now using that information to contact consumers.

this situation and warning them not to provide any information to callers purporting to offer refunds on behalf of American Financial or any of the other Receivership Defendants.

### D.    Arete's Debt Settlement Business

The Receiver did not assess Defendants' debt settlement business in his Preliminary Report, determining that it fell outside his mandate as expressed in the TRO and PI and that he lacked the authority to prevent Defendants from continuing operation of that business.  *See* ECF No. 95-1 at 2.  The Receiver subsequently concluded, however, that whether or not the operations violated any of the Prohibited Practices of the TRO and the PI, and whether or not Defendants made any effort to continue that business, the debt settlement business was an "Asset" of Arete under the terms of the PI and TRO.  *See id.* at 2-3.

While Arete's operations were effectively paused (given the asset freeze), the business was essentially a wasting asset – the longer it sat untended, the more customers it would lose and the less it would be worth.  Given the Receiver's determination that the debt settlement business qualified as a Receivership Asset and his duty to "conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets," *see* PI § XII.D, the Receiver determined it was in the best interests of the Receivership Estate to sell the debt settlement portfolio, *see* ECF No. 95-1 at 3.  The Receiver also determined that a sale would protect Arete's debt settlement customers.  *See id.*

The Individual Defendants who ran Arete's debt settlement business opposed the Receiver's *ex parte* application to approve its sale, and the Court ultimately denied the Receiver's motion to sell the debt settlement business.  *See* ECF No. 99.  Following two status conferences and briefing, the FTC and Individual Defendants Howe, Hsu, Palacios, and Pomazi jointly submitted a proposed order regarding the debt settlement business.  *See* ECF No. 115.  On

January 27, 2020, the Court entered an order enabling Arete to resume debt settlement operations for already-existing clients.  *See* ECF No. 116.  The order instructed the Receiver to restore the Arete Defendants' access to any CRM databases necessary to service Arete's existing clients, *see id.* at 3, and the Receiver also continues to forward mail he receives which is addressed to Arete.[5]

### E.     *Cunningham v. CBC Conglomerate, LLC, et al.*

In November 2017, well before the Receiver's appointment, Craig Cunningham sued Receivership Entities CBC Conglomerate, LLC and US Financial (the "*Cunningham* Receivership Defendants") and others for violations of the Telephone Consumer Protection Act.  The Preliminary Injunction (ECF No. 79, the "PI") entered by the Court on December 17, 2019 ordered a stay of actions "that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities," a prohibition which encompassed "continuing a judicial…action or proceeding against the Receivership Entities." PI § XVII.B.

The *Cunningham* Receivership Defendants had counsel in the case, the Lanza Law Firm, PC ("Lanza").  Lanza was already familiar with the case, and the Receiver determined the most efficient course was to continue to retain Lanza in the *Cunningham* action.  After the PI was entered, Lanza requested a stay on behalf of the *Cunningham* Receivership Defendants based on the "Stay of Actions" provisions in the PI in December of 2019.  Instead of ruling on the request for a stay, the Court entered an order on June 15, 2020, ordering the parties to file a joint status report within two weeks updating the Court on the status of the instant action (the "FTC Action").  After the filing of the status report, the Court stayed the *Cunningham* action until the conclusion of the FTC Action, requiring the *Cunningham* Receivership Defendants to file a status report within 30 days, and

---

[5]  The mail that was being delivered to the Receivership sites is being forwarded to the Receiver.

within every 60 days thereafter.  Lanza filed the first status report on behalf of the *Cunningham* Receivership Defendants on June 29, 2020.

With the case stayed, there is little to be done.  Lanza will continue to file status reports as ordered by the *Cunningham* Court, and the Receiver will keep this Court apprised of the status of the case.

## III.

## RECEIVERSHIP ACCOUNTING

Attached as Exhibit A is a Receipts and Disbursements Summary from inception to November 10, 2020.  During this time period, receipts were $1,188,310.43, primarily comprised of funds from accounts frozen under the provisions of the TRO ($1,182,883.36) and the sale of Receivership Entities' office furniture and equipment ($5,000.00).  Disbursements were $285,346.45, primarily comprised of Court-approved professional fees ($277,157.28) and vehicle storage ($4,125.00).  The current aggregate balance of the receivership bank accounts is $903,071.30.

Dated:  November 11, 2020              MCNAMARA SMITH LLP


                                       By:    /s/ Cornelia J.B. Gordon
                                            Cornelia J. B. Gordon
                                            *Attorneys for Receiver,*
                                            *Thomas W. McNamara*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3        I hereby certify that on the 11th day of November, 2020, I caused the

4    foregoing to be electronically filed with the Clerk of the Court using the CM/ECF

5    system, which will send notification of the filing to all participants in the case who

6    are registered CM/ECF users.

7

8     /s/ Cornelia J. B. Gordon
      Cornelia J. B. Gordon
9     *Attorney for Receiver,*
      *Thomas W. McNamara*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28