STEPHEN T. FAIRCHILD
WA Bar No. 41214; sfairchild@ftc.gov
RICHARD MCKEWEN
WA Bar No. 45041; rmckewen@ftc.gov
FEDERAL TRADE COMMISSION
915 Second Avenue, Suite 2896
Seattle, WA 98174
Tel.: (206) 220-6350; Fax: (206) 220-6366

ROBERT J. QUIGLEY, Local Counsel
CA Bar No. 302879; rquigley@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel.: (310) 824-4300; Fax: (310) 824-4380

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL SUPPORT SERVICES INC., et al.,<br><br>Defendants. | Civ. No. 8:19-cv-02109-JWH (ADSx)<br><br>**PLAINTIFF FTC'S OPPOSITION TO DEFENDANTS ARETE FINANCIAL GROUP AND ARETE FINANCIAL GROUP LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Judge: Hon. John W. Holcomb<br>Date: November 19, 2021<br>Time: 9:00 a.m. |

## TABLE OF CONTENTS

**I.**   FACTS ...........................................................................................................2

    **A.**   Defaulting Defendants' Non-Participation Prior to Default .................2

    **B.**   Defaulting Defendants' Non-Participation After Default....................5

**II.**   LEGAL STANDARD ...................................................................................7

**III.**   THE COURT SHOULD NOT SET ASIDE DEFAULT ...............................8

    **A.**   Defaulting Defendants' culpable conduct led directly to default. ........8

        **1.**   Defaulting Defendants' failure to answer is culpable conduct. ......9

        **2.**   The Receiver informed Defaulting Defendants' principals that he would not defend Defaulting Defendants, but that Defaulting Defendants were free to retain their own counsel...............................13

        **3.**   Defaulting Defendants do not otherwise justify their culpable conduct. ...................................................................................15

    **B.**   Defaulting Defendants fail to present a meritorious defense.............18

        **1.**   Defaulting Defendants have no meritorious defenses against injunctive relief.................................................................................19

        **2.**   Defaulting Defendants have no meritorious defenses against monetary relief. ...............................................................................21

    **C.**   Setting aside default will prejudice the FTC and consumers.............23

    **D.**   Setting aside default after nearly two years would be inequitable......25

**IV.**   CONCLUSION............................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*FTC v. Colgate Palmolive Co.*, 380 U.S. 374 (1965) ................................................20

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ........................................................................ 8, 13, 14, 25

**Court of Appeals Cases**

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685 (9th Cir. 1988) ...............................................................11

*Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993 (9th Cir. 2007) ..................................................................................13

*Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) ............................................7, 23

*Franchise Holding II v. Huntington Rests. Grp., Inc.*, 375 F.3d 922 (9th Cir. 2004) ........................................................................ passim

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) .............................................22

*FTC v. Grant Connect, LLC*, 763 F.3d 1094 (9th Cir. 2014) ..................................20

*Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508 (9th Cir. 1986) .....................23

*TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001) ........................................................................ 9, 23, 25

*Thompson v. Am. Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1996) ..........................23

*United States v. Russell*, 578 F.2d 806 (9th Cir. 1978) (per curiam) .....................13

*United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085 (9th Cir. 2010) ...............................................................9, 12

**District Court Cases**

*Bower v. Cnty. of Riverside*, No. EDCV 15-2660 DSF (KKx), 2019 WL 3308821 (C.D. Cal. Apr. 19, 2019) ............................................................8

*Clearwater 2007 Note Program, LLC v. Piell*, No. 1:12-cv-00208-BLW, 2014 WL 576098 (D. Idaho Feb. 11, 2014) ..................................9

*CWT Can. II LP v. Danzik*, No. CV-16-00607-PHX-DGC, 2017 WL 1437557 (D. Ariz. Apr. 24, 2017) ......................................9, 13

*FTC v. Magui Publishers, Inc.*, No. CV 89–3818–RSWL, 1990 WL 132719 (C.D. Cal. Apr. 24, 1990) ......................................16

*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ..................................................................22

*FTC v. Noland*, 475 F. Supp. 3d 992 (D. Ariz. 2020) ........................16

*Howell v. Dep't of the Army*, 975 F. Supp. 1293 (M.D. Ala. 1997) ........10

*In re Sanctuary Belize Litig.*, No. 1:18-cv-03309-PJM, 2020 WL 42825 (D. Md. Jan. 3, 2020) ....................................10

*In re Seare*, 493 B.R. 158 (Bankr. D. Nev. 2013) ..........................14

*Integrity Comms. Corp. v. Baker*, No. 10 Civ. 3238(DAB)(RLE), 2013 WL 4830948 (S.D.N.Y. Sept. 10, 2013) ........................20

*LY Retail LLC v. Ison Furniture LLC*, No. CV-13-00625-BRO (JEMx), 2013 WL 12437758 (C.D. Cal. Sept. 9, 2013) ..............8

*Perciballi v. Ng*, No. SACV 08-01168 JVS (ANx), 2013 WL 12334833 (C.D. Cal. July 22, 2013) ....................................18

*Phiten Co. v. Gutos*, No. CV 10–9959–GHK (PJWx), 2012 WL 13006193 (C.D. Cal. Feb. 2, 2012)................................ 12, 13

*Tire Stickers, LLC v. Scuderia Automobili*, No. CV 18-5128-MWF (KSx), 2018 WL 6844721 (C.D. Cal. Oct. 16, 2018)............ 9, 11, 15, 19

*United States v. Zaken Corp.*, 57 F. Supp. 3d 1233 (C.D. Cal. 2014) ....21

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012) ..................................................................23

*Wells Fargo Bank, N.A. v. Weems*, No. CV 15-7768 RSWL (PJWx), 2016 WL 1118206 (C.D. Cal. Mar. 22, 2016)........................25

*Yoon Chul Yoo v. Arnold*, No. CV 09-07483 MMM (CWx), 2012 WL
13071636 (C.D. Cal. Oct. 10, 2012), *aff'd*, 615 F. App'x 868 (9th
Cir. 2015) ............................................................................................ 14, 18

## Statutes

15 U.S.C. § 45 ....................................................................................................2

15 U.S.C. § 53(b) ...............................................................................................2

15 U.S.C. § 57b ..................................................................................................2

## Regulations

Telemarketing Sales Rule, 16 C.F.R. pt. 310 .....................................................2

## Rules

Fed. R. Civ. P. 54(c) ........................................................................................20

Fed. R. Civ. P. 55(b)(1) .....................................................................................5

Fed. R. Civ. P. 55(c) ..........................................................................................7

Fed. R. Civ. P. 60(b) ..........................................................................................7

Local Rule 55-1 ..................................................................................................5

## Other Authorities

L.A. Cnty. Bar Ass'n, Prof'l Responsibility & Ethics Comm'n, Ethics
Op. 449 (Mar. 1988) .....................................................................................14

Nearly two years ago, Defendants Arete Financial Group and Arete Financial Group LLC (collectively here, "Defaulting Defendants") were properly served with this action's Complaint, summons, and Temporary Restraining Order freezing their assets. Defaulting Defendants did not respond. Defaulting Defendants' owner and officer received process on behalf of both entities. Defaulting Defendants did not respond. Four individual Defendants, each an owner or executive of Defaulting Defendants, appeared through counsel and contested entry of this case's preliminary injunction. Defaulting Defendants did not respond. Plaintiff, the Federal Trade Commission ("FTC"), engaged in lengthy negotiations with those individual Defendants' counsel, which later resulted in settlement and a final order. Defaulting Defendants did not respond. Despite having notice of this action from its beginning, Defaulting Defendants never filed an answer, responsive pleading, or other document. As a result, over four months after the Complaint was filed and Defaulting Defendants were served, the Clerk of Court entered defaults against Defaulting Defendants. Defaulting Defendants still did not respond or take any other action in this case for over *seventeen more months*. It is undisputed that, from this case's November 2019 inception until September 2021, Defaulting Defendants did nothing to defend, appear, or otherwise participate in this action.

After twenty-two months of witting indifference, Defaulting Defendants have belatedly appeared through counsel and, mere hours before the FTC's motion for default judgment was to be heard, demanded that the Court set aside their defaults. Dkt. 194 ("Motion" or "Mem."). Defaulting Defendants, however, have failed to meet their burden to show good cause to vacate their defaults. They have failed to show that their defaults did not result from their culpable conduct, that they have a meritorious defense, or that the FTC and consumers would not be prejudiced by resuming this litigation over a year and a half after they defaulted.

To the contrary, the facts reveal that (1) Defaulting Defendants are legally sophisticated entities that have previously been represented by counsel in multiple

similar cases and could have retained counsel here—they simply chose not to; (2) the "assumption" that the Receiver would appoint counsel for them is both legally inapposite and disproved by communication between the Receiver and counsel for Defaulting Defendants' principals; (3) Defaulting Defendants' purported—and exclusively legal—defenses to the proposed relief lack merit; and (4) the indeterminate delay they seek in this case would substantially prejudice the FTC and consumers. The Court should not reward Defaulting Defendants' extraordinary tardiness with a do-over. It should, instead, deny their Motion.

## I.   FACTS

### A.   Defaulting Defendants' Non-Participation Prior to Default

The FTC filed suit on November 4, 2019, alleging that Defaulting Defendants, and other corporate and individual Defendants, deceptively marketed and sold student loan debt relief services in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. pt. 310. *See* Compl. [Dkt. 1] ¶ 1. The FTC sought injunctive and monetary relief under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b. Compl. ¶ 1. The FTC also sought a temporary restraining order ("TRO") enjoining Defendants' practices and granting interim relief including an asset freeze and the appointment of a Receiver. As detailed in the FTC's memorandum in support of the TRO, four individual Defendants served as owners or executives of Defaulting Defendants: Shunmin "Mike" Hsu, Carey Howe, Ruddy Palacios, and Oliver Pomazi (collectively, "Individual Defendants"). *See* Dkt. 2-2 at 12–13.

On November 4, 2019, the Court entered the TRO sought by the FTC and ordered the Defendants to show cause why a preliminary injunction should not issue. Dkt. 41. On November 6, the Receiver, accompanied by the FTC, accessed Defaulting Defendants' business premises at 1261 Dyer Road in Santa Ana as authorized by the TRO. *See* TRO [Dkt. 41] § XX. Within twenty minutes after the immediate access began, Defaulting Defendants were served with the Complaint,

summons, TRO, and supporting materials via personal service on Individual Defendant Hsu, who held himself out as Defaulting Defendants' owner. Dkts. 60–61; *compare* Receiver's Report [Dkt. 57-1] at 2 (immediate access "commenc[ed] at approximately 11:30 a.m. on November 6, 2019") *with* Dkts. 60–61 (proofs of service on Defaulting Defendants at 11:50 a.m. on November 6, 2019). Thus, Defaulting Defendants have had actual notice of this case, and the Receiver's role in it, since November 6, 2019. Defaulting Defendants have not challenged, and do not now dispute, the validity of service upon them. *See* attached Decl. of FTC Counsel Stephen T. Fairchild ("Fairchild Decl.") ¶ 2. Defaulting Defendants did not file an answer within twenty-one days of service, as required by Fed. R. Civ. P. 12(a)(1)(A)(i), or at any time thereafter. *Id.* ¶ 3.

Two days after they received notice of this action, Individual Defendants— the owners and executives of Defaulting Defendants—retained Bienert Katzman PC, represented primarily by attorneys Ariana Hawbecker and Ali Matin.[1] Ms. Hawbecker and Mr. Matin represented Individual Defendants at the November 18, 2019 show-cause hearing to oppose entry of the preliminary injunction. *See generally* Tr. of Nov. 18, 2019 Hr'g [Dkt. 73]. The Court rejected Individual Defendants' arguments and entered the preliminary injunction, finding that the FTC was likely to succeed on the merits. Dkt. 75. Around that time, the parties began to explore the possibility of settlement, and Bienert Katzman represented the Individual Defendants in settlement negotiations with the FTC, involving dozens of telephone and email communications, from November 2019 to the September

---

[1] *See* Fairchild Decl. **Attach. A** (Nov. 8, 2019 email from Thomas H. Bienert, Jr. Esq. to FTC and Receiver). This email was sent by Thomas Bienert, Esq., who also appeared on behalf of Individual Defendants and briefly spoke at the November 18, 2019 show-cause hearing, but did not otherwise participate in the case. *Id.* ¶ 8.

2020 final order against Individual Defendants (Dkt. 145). Fairchild Decl. ¶ 4.[2]

Pursuant to the TRO entered by the Court, all Defendants were required to submit financial disclosures to the FTC and Receiver. TRO [Dkt. 41] § V. On December 2 and December 9, 2019, Individual Defendants' counsel produced to the FTC and Receiver Defaulting Defendants' financial disclosures. Fairchild Decl. **Attachs. B–C**. Individual Defendant Carey Howe signed both disclosures on behalf of the Defaulting Defendants. *Id.*

On November 22, 2019, Individual Defendants' counsel requested a thirty-day extension "for [her] clients (Howe, Palacios, Hsu, Pomazi) *and their related entities* to respond to the FTC's complaint." Fairchild Decl. **Attach. D** (emphasis added). When the FTC asked counsel to clarify the identities of the "related entities," Ms. Hawbecker replied that she was referring to the "Corporate Defendants" in paragraphs 8–13 of the Complaint, which includes Defaulting Defendants. *Id.*; Compl. ¶¶ 8–9 (listing Defaulting Defendants as Corporate Defendants). As memorialized in the parties' stipulation, the FTC "agreed to a 30-day extension for the Arete Individuals to file their responses to the Complaint, along with Corporate Defendants." Dkt. 76 (listing Defaulting Defendants in the caption). The stipulation also noted that "the Corporate Defendants have yet to retain counsel." *Id.* However, the answers filed on December 27, 2019, did not include an answer or other response from Defaulting Defendants. *See* Dkts. 85–88. The Individual Defendants amended their answers on January 17, 2020, *see* Dkts. 102–05, but again, Defaulting Defendants did not file an answer or other response.

---

[2] Individual Defendants' counsel's representation ended when the Court entered final judgment on September 9, 2020. *See* Stip. Order for Perm. Inj. & Monetary J. as to Indiv. Defs. [Dkt. 145]. The FTC shares Defaulting Defendants' understanding that Ms. Hawbecker and Mr. Matin left Bienert Katzman in approximately October and November 2020, respectively. Mem. at 7.

1    Over two more months passed with no answer, response, or other

2    appearance from Defaulting Defendants. On March 18, 2020, the FTC applied for

3    entry of default against Defaulting Defendants and five other corporate Defendants

4    that had failed to answer or otherwise respond. Dkt. 133. The FTC supported its

5    application with a declaration of counsel meeting the requirements of Fed. R. Civ.

6    P. 55(b)(1) and Local Rule 55-1, demonstrating that each of the seven corporate

7    Defendants had been properly served, had failed to file a pleading or otherwise

8    respond to the complaint, and otherwise met the requirements for entry of default.

9    Dkt. 133-1. On March 20, 2020, the Clerk of Court entered default against

10   Defaulting Defendants and the other non-responding corporate Defendants. Dkt.

11   140 (Am. Default by Clerk).

12       **B.    Defaulting Defendants' Non-Participation After Default**

13       Shortly after the FTC applied for entry of default on March 18, 2020, then-

14   counsel for Individual Defendants wrote to FTC counsel to express "surprise" at

15   the FTC's application and requested that the FTC withdraw it. The FTC declined

16   to withdraw its application, but, to promote continuing settlement discussions,

17   offered to refrain from moving for default judgment for at least sixty days after

18   entry of default (i.e., May 19, 2020), to which Individual Defendants' counsel

19   agreed. Fairchild Decl. **Attach. E** at 2–3. A few days later, after the Clerk's entry

20   of default, Individual Defendants' counsel responded to "circle back on" certain

21   issues, including a conversation he had with counsel for the Receiver:

22       We've asked the Receiver's counsel about why he allowed default to
23       be entered against the receivership entities. While acknowledging his
         exclusive authority over the entities in which our clients have an
24       ownership interest, *counsel indicated that the Receiver did not intend
         to defend the companies in this action but had no objection if the*
25       *entities were represented by outside counsel.* Once the corporate
         defendants are represented by outside counsel, the entities will no
26       doubt seek to vacate default.

27   *Id.* at 2 (emphasis added). With the May 19, 2020 deadline approaching, Individual

28   Defendants' counsel asked the FTC for a thirty-day extension to forbear from

filing for default judgment, and the FTC again agreed. *Id.* at 1.

In June 2020, the FTC granted a final thirty-day extension at the request of Individual Defendants' counsel. Fairchild Decl. ¶ 13 & **Attach. F** at 1. At the same time, the FTC raised the issue of the unrepresented, defaulted Corporate Defendants and presented counsel with a choice: the FTC could obtain a default judgment against Corporate Defendants, or Individual Defendants' counsel could appear on their behalves for the limited purpose of signing a consent judgment. *Id.* **Attach. F** at 2. In a subsequent phone conversation to explain these options, the FTC informed Ms. Hawbecker that in previous FTC cases, counsel for individual defendants have made similar limited appearances, without objection from a receiver. Fairchild Decl. **Attach. G** at 1. In a follow-up email, FTC counsel provided Ms. Hawbecker with an example of such a consent judgment. *Id.* Ms. Hawbecker, however, declined at that time to appear or sign a consent order on Defaulting Defendants' behalf and did not subsequently change position. *Id.* ¶ 15.

From the March 2020 entry of default until the appearances of their counsel on September 2, 2021, Dkts. 183–84, Defaulting Defendants did not file an answer, motion, or any other document, participate in discovery, or make any contact with the FTC. Fairchild Decl. ¶ 6. Besides the above communications with counsel, the FTC has not communicated with Defaulting Defendants' principals about default, default judgment, or the Receiver's authority to appoint counsel. *See id.* ¶¶ 5, 7.

After the Clerk entered defaults against Defaulting Defendants, the companies' principals continued doing business in the name of their defaulted companies. On August 31, 2020, Arete Financial Group filed a statement of information with the California Secretary of State, which listed a new business address in Tustin and Individual Defendant Hsu as CEO, secretary, CFO, sole director, and agent for service. Fairchild Decl. **Attach. H**. Similarly, Arete Financial Group LLC filed a statement of information on May 7, 2021, listing the same business address in Tustin and Individual Defendant Hsu as sole managing

member and agent for service. *Id.* **Attach. I**.

The FTC moved for default judgment on January 8, 2021. Dkt. 161. Between the FTC's motion for default judgment and Defaulting Defendants' first appearance through counsel in September 2021, this case's public docket has provided notice of at least nine events related to the hearing on default judgment. *See* Dkts. 163, 164, 166, 169, 174, 176, 177, 181, 182.

## II.    LEGAL STANDARD

The Court may set aside an entry of default only upon a showing of "good cause." Fed. R. Civ. P. 55(c). The Rule 55(c) standard "is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) (affirming denial of motion to set aside default). To determine whether there is good cause to set aside a party's default under Rule 55(c), courts in the Ninth Circuit consider three "*Falk* factors": "(1) whether [the defendant] engaged in culpable conduct that led to the default; (2) whether [the defendant] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the plaintiff]." *Id.* at 926 (quotation omitted); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). "As these factors are disjunctive, ***the district court [is] free to deny the motion if any of the three factors" favors the plaintiff***. *See Franchise Holding II*, 375 F.3d at 926 (emphasis and brackets added; quotation omitted). Defaulting Defendants bear the burden to show that any *Falk* factor favors setting aside default. *See id.*

"While the law favors deciding disputes on the merits," the Ninth Circuit has made clear that a district court retains discretion to refuse to set aside a default when circumstances warrant. *See id.* at 924. The analysis is "at bottom an equitable one," taking into account all relevant circumstances, including "the danger of prejudice . . . the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These factors "largely overlap[] with the issue of culpability." *Franchise Holding II*, 375 F.3d at 927 (quotation and citations omitted).

## III.   THE COURT SHOULD NOT SET ASIDE DEFAULT

If any one of the three *Falk* factors is true, the Court can and should deny Defaulting Defendants' Motion. *See Franchise Holding II*, 375 F.3d at 926. Here, each of the three factors independently supports denial.

### A.   Defaulting Defendants' culpable conduct led directly to default.

The Clerk entered default when, even after proper and repeated notice, Defaulting Defendants failed for over four months to answer or otherwise appear. As explained below, under well-established law, that is culpable conduct.

In attempting to convince this Court otherwise, Defaulting Defendants make two fundamental errors of law. First, they rely extensively on their actions and supposed knowledge of the case *after* the Clerk's March 2020 entry of default. *E.g.*, Mem. at 7–9, 14. But the *Falk* standard evaluates defendants' conduct "that *led to* the default," *Franchise Holding II*, 375 F.3d at 926 (emphasis added), and only "Defendants' reason for failing to answer the complaint *before* the entry of default is the focus of the inquiry." *LY Retail LLC v. Ison Furniture LLC*, No. CV-13-00625-BRO (JEMx), 2013 WL 12437758, at *2 (C.D. Cal. Sept. 9, 2013); *accord Bower v. Cnty. of Riverside*, No. EDCV 15-2660 DSF (KKx), 2019 WL 3308821, at *2 (C.D. Cal. Apr. 19, 2019). As such, Defaulting Defendants' alleged post-default knowledge and actions are irrelevant to the culpable conduct analysis.

Second, Defaulting Defendants misidentify the standard for evaluating the culpable conduct of legally sophisticated entities like themselves. The relevant standard is not whether the defendant merely "offers a credible, good faith explanation negating any intention to take advantage of" the litigation process. Mem. at 11. Rather, for a "legally sophisticated" defendant in the Ninth Circuit, the "defendant's conduct may be considered culpable 'if the defendant has received

actual or constructive notice of the filing of the action and failed to answer,'" without the need to consider intentionality. *See United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1093 (9th Cir. 2010) (quoting *Franchise Holding II*, 375 F.3d at 926) (alterations omitted). A showing of intent is not required because, "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality."[3] *Id.* (distinguishing between the *Franchise Holding II* standard and the standard for unsophisticated defendants); *see also Tire Stickers, LLC v. Scuderia Automobili*, No. CV 18-5128-MWF (KSx), 2018 WL 6844721, at *4 (C.D. Cal. Oct. 16, 2018) ("[T]he sophistication of the defendant is an important factor when considering culpability."). "A party is legally sophisticated when it has experience in lawsuits involving issues similar to those in the current litigation." *CWT Can. II LP v. Danzik*, No. CV-16-00607-PHX-DGC, 2017 WL 1437557, at *2 (D. Ariz. Apr. 24, 2017) (citing *TCI*, 244 F.3d at 699 n.6); *see also Clearwater 2007 Note Program, LLC v. Piell*, No. 1:12-cv-00208-BLW, 2014 WL 576098, at *3–4 (D. Idaho Feb. 11, 2014) (recognizing "[t]his is not [defendant's] first time in federal court and the fact of his prior familiarity with the world of lending and lawsuits is of significance in this motion," and finding culpability for failure to respond).

### 1.   Defaulting Defendants' failure to answer is culpable conduct.

Defaulting Defendants are legally sophisticated entities. They were represented by counsel in responding to at least three other federal and state cases involving their telemarketing of debt relief services in the year before this case's

---

[3] *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001), cited by Defaulting Defendants, is not to the contrary. In *TCI*, the Ninth Circuit noted that even despite a good faith explanation, a failure to answer may still be "culpable or inexcusable" after "the equitable factors are considered." *Id.* at 697.

filing.[4] Defaulting Defendants, through their Individual Defendant principals, therefore knew how to retain counsel to represent them and appreciated the significance of not responding. Their Individual Defendant principals were also represented by competent counsel for months, and are thus presumed to know what the consequences of a default would be. *See Howell v. Dep't of the Army*, 975 F. Supp. 1293, 1297 (M.D. Ala. 1997) (explaining that, when parties are "represented by counsel," they "can be presumed to appreciate . . . the consequences of default") (internal quotations omitted)). More specifically, represented individual defendants are presumed to appreciate the consequences of default for companies in which they are principals. *See In re Sanctuary Belize Litig.*, No. 1:18-cv-03309-PJM, 2020 WL 42825, at *1 n.1, *2 (D. Md. Jan. 3, 2020) (granting FTC's motion for entry of default against non-responding corporate defendants and observing the individual defendant-principal "has been represented by counsel during the better part of these proceedings. When he had counsel, neither he nor they ever attempted to file a motion on behalf of the entities he now seeks to represent . . . .").

In *Tire Stickers*, for example, the corporate defendant's owner "consulted an attorney for settlement negotiation and would likely have been informed that [the corporate defendant] may not proceed without counsel. . . . Far from being 'without the help of a lawyer', [the corporate defendant] should have been aware

---

[4] *See Shelton v. Arete Fin. Grp.*, No. 2:18-cv-02187(CMR) (E.D. Pa. filed May 24, 2018), ECF Nos. 11 (motion to dismiss filed by Norman Valz, Esq.) (Fairchild Decl. **Attach. J**), 27 (answer filed by Mr. Valz) (Fairchild Decl. **Attach. K**); *North Dakota v. Arete Fin. Grp., LLC*, No. 08-2018-CV-01231 (N.D. Dist. Ct. filed May 7, 2018) (assurance of voluntary compliance with affidavit of service to William Mitchell, Esq.) (Fairchild Decl. **Attach. L**); *Morgan & Curtis Assocs. v. Arete Fin. Grp.*, No. 30-2018-00978704-CU-AT-CXC (Orange Cnty. Super. Ct. filed Mar. 6, 2018) (answer filed by William R. Mitchell, Esq.) (Fairchild Decl. **Attach. M**). Mr. Mitchell represented Defendants Jay Singh, American Financial Support Services Inc., and US Financial Freedom Center, Inc. in the instant case.

of the consequences of failing to obtain counsel and properly participate in this action, well before an entry of default." 2018 WL 6844721, at *4. The court further rejected the exact argument that Defaulting Defendants make here: "that the default should be excused because" the corporate defendant's owner "is not an attorney and unfamiliar with the legal system." *Compare id. with* Palacios Decl. ¶¶ 13, 15. In this case, Defaulting Defendants were effectively represented before the entry of default. As in *Tire Stickers*, Defaulting Defendants' principals, including Individual Defendant Palacios, were represented by experienced counsel in opposing this case's preliminary injunction, answering the Complaint, and negotiating settlement—thus, they presumptively were aware of the risks of Defaulting Defendants' nonappearance and lack of counsel.

Furthermore, Defaulting Defendants have received ample actual and constructive notice since the beginning of this action. Defaulting Defendants do not dispute that they were properly served through Individual Defendant Hsu, the companies' owner and officer. Dkts. 60–61; *cf. Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988) (affirming refusal to vacate default judgment where company had actual notice of summons and complaint through service on its president). Defaulting Defendants' principals, the Individual Defendants, were represented by competent counsel from this case's inception, including at the show-cause hearing on the preliminary injunction, at which Individual Defendants' counsel or other attorneys could have sought to appear for Defaulting Defendants. Counsel continued to represent Individual Defendants in answering the Complaint and conducting settlement negotiations with the FTC through the entry of default (and beyond), receiving notifications of filings in this case the entire time. Despite these multiple sources of notice, Defaulting Defendants never answered or otherwise responded between Complaint and default, making their default entirely the result of their culpable conduct.

Under the correct legal standard, Defaulting Defendants' pre-default failure

to answer, standing alone, ends the analysis: It conclusively shows that their culpable conduct led to default. *See Franchise Holding II*, 375 F.3d at 926. But even if intentionality were relevant and the Court were to consider post-default conduct, the evidence is clear that Defaulting Defendants acted intentionally, since "'there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Phiten Co. v. Gutos*, No. CV 10–9959–GHK (PJWx), 2012 WL 13006193, at *2 (C.D. Cal. Feb. 2, 2012) (quoting *Mesle*, 615 F.3d at 1092). As described in Part I above, Defaulting Defendants used Individual Defendants' counsel to submit the corporate financial disclosures required by the TRO, which were signed by represented Individual Defendant Howe. Individual Defendants' counsel requested an extension to respond to the Complaint on Defaulting Defendants' behalves and represented in a Court stipulation that Defaulting Defendants would file a response and retain counsel, but then passed up at least two opportunities for Defaulting Defendants to answer. In March 2020, the FTC accommodated Individual Defendants' counsel's "surprise" at the entry of default by offering to defer moving for default judgment, based in part on counsel's representation that Defaulting Defendants would "no doubt seek to vacate default" once they had retained counsel. At counsel's request, the FTC granted two more deferments to seeking default judgment. And in June 2020, the FTC informed Bienert Katzman that it would seek a default judgment unless Individual Defendants' counsel appeared on behalf of and signed a consent judgment for Defaulting Defendants. But counsel, apparently, chose not to.

Despite this ample notice, and nine events on the docket, Defaulting Defendants did not retain counsel, seek to vacate default, communicate with the FTC, or otherwise act in the case for over seventeen more months—even as they continued doing business and filing Secretary of State documents in the names of entities their principals knew were Defendants under receivership. These actions and inactions are a far cry from inadvertence. Instead, they lead to the inescapable

conclusion that Defaulting Defendants' failure to answer or otherwise respond was willful, deliberate, and strategic. *See United States v. Russell*, 578 F.2d 806, 808 (9th Cir. 1978) (per curiam) (affirming denial of motion to vacate default judgment where "[t]here was ample evidence to support the district court's finding that the default was willful and knowing"); *see also CWT Can.*, 2017 WL 1437557, at *6 (finding culpable conduct where litigation was pending for more than a year, default judgment was in place for more than six months, and defendant's owner was involved in the litigation for nine months); *Phiten Co.*, 2012 WL 13006193, at *3 (finding culpable conduct where defendants had undisputed notice and failed to answer even though they stipulated to extend response deadline, default was entered three months after stipulated deadline, and plaintiffs agreed to refrain from requesting entry of default several times). As in *Phiten Co.*, Defaulting Defendants, who had access to counsel throughout this litigation, should not be able to "exhibit complete disregard of the Court's need to control its docket and ensure a speedy progression of its cases, and then be granted relief from default . . . once they deem it to be convenient for them to finally participate." 2012 WL 13006193, at *3.

### 2.   The Receiver informed Defaulting Defendants' principals that he would not defend Defaulting Defendants, but that Defaulting Defendants were free to retain their own counsel.

Defaulting Defendants' main argument for overlooking their belated appearance is that it resulted from the Individual Defendants' mistaken belief that they could not appoint counsel on Defaulting Defendants' behalf, but that the Receiver would do so. Mem. at 12–13. Even if it is genuine, that belief is inapposite as a matter of law. *See Pioneer*, 507 U.S. at 392 ("[M]istakes construing the rules do not usually constitute 'excusable' neglect.") (cited in Mem. at 11, 16, 17); *cf. Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (holding defendant's "failure to secure replacement counsel, as required by the local rules, certainly cannot be described as 'excusable neglect' given clear notice to [defendant] of the need to obtain counsel and [defendant]'s unexplained

delay in doing so"). But even more damningly, the facts belie the claim that this purported belief is by any measure "reasonable."[5] That is because Individual Defendants' counsel knew, and represented to the FTC, that the Receiver's position was *precisely the opposite* of what Defaulting Defendants claim. As Mr. Matin told the FTC, the Receiver's "counsel ***indicated that the Receiver did not intend to defend the companies in this action*** but had no objection if the entities were represented by outside counsel." Fairchild Decl. **Attach. E** (emphasis added).

Mr. Matin's representation wholly vitiates Defaulting Defendants' central argument: that they failed to participate in this case because their principals assumed or "understood that the Receiver would handle appointing counsel to defend" them. *See* Palacios Decl. ¶¶ 5, 8–9; Mem. at 13, 16. Perhaps Individual Defendants' counsel did not relay the Receiver's position to their clients, or did not advise them to retain separate counsel for the companies to contest the case (as the Receiver would have permitted), but that is no defense.[6] It is axiomatic that an

> attorney has a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of retention, and to inform the client that the limitations on the representation create the possible need to obtain additional advice, including advice on issues collateral to representation.

*In re Seare*, 493 B.R. 158, 186 (Bankr. D. Nev. 2013) (quoting L.A. Cnty. Bar Ass'n, Prof'l Responsibility & Ethics Comm'n, Ethics Op. 449 (Mar. 1988)). It is likewise fundamental that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396.

As a result, by March 2020 at the latest, Individual Defendants had, or

---

[5] Mem. at 15; *see Yoon Chul Yoo v. Arnold*, No. CV 09-07483 MMM (CWx), 2012 WL 13071636, at *7 (C.D. Cal. Oct. 10, 2012) (requiring reasonable explanation for default), *aff'd*, 615 F. App'x 868 (9th Cir. 2015).

[6] Individual Defendants' counsel could also have asked the Receiver to let them represent Defaulting Defendants, but they apparently never made that request.

should have had, notice that they would need to retain non-Receiver counsel to represent the Defaulting Defendants. That is presumably why Individual Defendants' counsel further represented to the FTC that "[o]nce the corporate defendants are represented by outside counsel, the entities will no doubt seek to vacate default." Fairchild Decl. **Attach. E** at 2 (Mar. 24, 2020). But for whatever reasons, they chose not to retain counsel and attempt to vacate default until nearly 18 months later. That is a strategic choice, not a mistake, and does not support vacating default. *See Tire Stickers*, 2018 WL 6844721, at *4 (denying motion to set aside default where corporate defendant "has known about this action from the beginning and failed to respond even after being informed that it needed counsel to proceed"). The nearly 18-month gap between entry of default and Defaulting Defendants' instant Motion is far longer than the similar 11-month gap that supported a finding of culpable conduct in *Franchise Holding II*, 375 F.3d at 925, 927. Defaulting Defendants' choice to stay on the sidelines for a year and a half shows not inadvertence but culpable conduct. It does not support vacating default.

### 3.    Defaulting Defendants do not otherwise justify their culpable conduct.

Defaulting Defendants' remaining arguments are equally unpersuasive. Grasping for ways to avoid admitting that they caused a *twenty-two month* delay, Defaulting Defendants resort to a makeshift "unclean hands" argument by claiming that communications between their counsel and the FTC last month somehow evince an FTC position that Defaulting Defendants could not have selected counsel in March 2020. *See* Mem. at 8–9, 12. To be clear: The preliminary injunction vests the Receiver with "full control of Receivership Entities," i.e., Defaulting Defendants, including the authority to "choose, engage, and employ attorneys." Dkt. 79 § XII.[7] As the FTC informed Defaulting Defendants' counsel (at their

---

[7] Presumably for this reason, Individual Defendants' counsel acknowledged the

request), courts consistently hold that when a receiver has been appointed, the receiver ordinarily has authority to retain counsel for corporate defendants, though that authority is delegable.[8] *See* Esmaili Decl. [Dkt. 194-1] Exs. 2–3 (citing *FTC v. Magui Publishers, Inc.*, No. CV 89–3818–RSWL, 1990 WL 132719, at *1 n.1, *3 (C.D. Cal. Apr. 24, 1990)); *FTC v. Noland*, 475 F. Supp. 3d 992, 998 (D. Ariz. 2020) ("[T]he authority to choose a company's counsel is ordinarily a concomitant feature of being named a company's receiver."). Any fair reading shows the FTC was ensuring its compliance with the Court's Order. *See* Esmaili Decl. Ex. 3.

But the argument is wholly irrelevant. First, the September 2021 inter-counsel communications between the FTC and Defaulting Defendants have no bearing on Defaulting Defendants' dispositive, pre-default failure to answer and retain counsel, since the FTC did not communicate with their principals about the Receiver's authority. Fairchild Decl. ¶ 7. Even more importantly, as the communication between the Receiver and Individual Defendants' counsel shows, *there was nothing to stop Defaulting Defendants from retaining their own counsel*. That communication belies Defaulting Defendants' concern that "[n]ot allowing the Arete Entity Defendants to appear through counsel and defend implicates due process considerations." Mem. at 16. In this regard, Defaulting Defendants attack a strawman in characterizing *Noland* as "highlight[ing] the due process concerns that not allowing the Arete Entity Defendants to defend this case would raise,"[9] since

---

Receiver's "exclusive authority over the entities in which [his] clients have an ownership interest," and that "only the Receiver has authority to act on the entities' behalf." Fairchild Decl. **Attach. E** at 2–3.

[8] Tellingly, Defaulting Defendants' counsel did not respond to the FTC's request for authority holding otherwise, and their Motion provides none.

[9] *See* Mem. at 16–17. Defaulting Defendants' reliance on *Noland* is puzzling, since that case merely confirmed the well-established principle that a receiver is not required to allow individual defendants' chosen counsel to represent corporate defendants. 475 F. Supp. 3d at 998.

1    Mr. Matin's email establishes the lack of any such concerns. *See* Fairchild Decl.

2    **Attach. E**. Neither the Receiver nor the FTC ever prevented Defaulting

3    Defendants' principals, acting through Bienert Katzman or on their own, from

4    asking the Receiver for permission to retain counsel—which, as Mr. Matin made

5    clear, the Receiver would have given. They simply, and deliberately, chose not to.

6         As for Mr. Palacios's declaration, it consists largely of secondhand

7    statements from unnamed actors lacking foundation, hearsay, and other

8    inadmissible evidence that should be stricken. *See* FTC's simultaneously filed

9    Evidentiary Objections. Aside from its inadmissibility, the declaration lacks

10   credibility. Mr. Palacios testifies that "at all relevant times" he was Defaulting

11   Defendants' managing member and majority owner,[10] Palacios Decl. ¶ 2, and

12   "periodically checked the Court's docket starting in or around April 2021 to see if

13   the Arete Entity Defendants had settled with the FTC," *id.* ¶ 14. It strains credulity

14   that such a heavily involved principal would not know the settlement status of his

15   own companies while they continued in business. And while Mr. Palacios purports

16   to be "unfamiliar with legal proceedings," *id.* ¶ 13, his own testimony and

17   participation in this matter contradict his feigned naïveté. For example, Mr.

18   Palacios clearly is capable of monitoring legal proceedings, since he asserts that

19   the first time he learned of the "lack of response . . . about the status of the

20   settlement of the Arete Entity Defendants" was via "the Court's notification that

21   Mr. Matin's e-mail was bouncing on the Court's docket" (Dkt. 178). *Id.* ¶ 15. Mr.

22   Palacios apparently, and conveniently, neglected to glance at the two *immediately*

23   *preceding* docket entries, which reference the FTC's motion for default judgment

24   (including one entered five days earlier that lists Defaulting Defendants by name).

25   Dkts. 176–77. Mr. Palacios's admission that he periodically checked the docket

26

27   [10] Mr. Palacios was also secretary, COO, and a director of Arete Financial Group,
     and CEO and a financial signatory of Arete Financial Group LLC. Dkt. 2-2 at 13.
28

PLAINTIFF FTC'S OPPOSITION TO DEFENDANTS ARETE FINANCIAL GROUP AND ARETE FINANCIAL
GROUP LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT – 17

beginning in or around April 2021 is also telling, since the docket contains at least six entries pertaining to default judgment starting in that month—any one of which would have given Mr. Palacios notice that the Defaulting Defendants were unrepresented and subject to default. *See* Dkts. 169, 174, 176, 177, 181, 182. Mr. Palacios also submitted a declaration supporting his opposition to the FTC's preliminary injunction application (Dkt. 49-3), as well as a freestanding "supplemental declaration" the day after the preliminary injunction hearing, testifying that he was "in Court" for the hearing and contesting the FTC's in-court statements (Dkt. 70). Additionally, Mr. Palacios answered the Complaint as an Individual Defendant (Dkts. 87, 102), opposed the Receiver's application to sell Arete's debt settlement accounts (Dkt. 96), and joined the Individual Defendants' pre-default Ninth Circuit appeal of the preliminary injunction (Dkts. 113–14). Mr. Palacios, therefore, was well aware of legal proceedings and the implications of default, and his self-serving declaration—as incredible and inadmissible as it is— does nothing to convince otherwise. *See Perciballi v. Ng*, No. SACV 08-01168 JVS (ANx), 2013 WL 12334833, at *3 (C.D. Cal. July 22, 2013) (finding culpable conduct and declining to vacate default judgment where defendant's only evidence was a "self-serving declaration"); *Yoon Chul Yoo*, 2012 WL 13071636, at *6–7 (finding culpable conduct where defendant offered only "unsupported assertions," failed to explain omissions, and "clearly knew the case was ongoing").

     In sum, Defaulting Defendants fail to meet their burden to show that their exceptional delay in responding to this case was not the result of culpable conduct. The facts show the opposite, and the Court should deny their Motion.

### B.    Defaulting Defendants fail to present a meritorious defense.

     While Defaulting Defendants' culpable conduct alone is sufficient reason to deny their Motion, they also fail to present a meritorious defense that would justify doing so. To meet this second *Falk* factor, a defendant must present the Court with "specific facts that would constitute a defense." *Franchise Holding II*, 375 F.3d at

926. Mere conclusory statements that a dispute exists, or a "mere general denial without facts to support it," do not justify vacating default. *Id.* (quotation omitted). General objections made without supporting evidence are similarly insufficient. *See Tire Stickers*, 2018 WL 6844721, at *5–6. Here, Defaulting Defendants' argument that they have a meritorious defense is limited, going only to the scope of relief, not liability. Defaulting Defendants do not dispute any of the factual allegations of the Complaint, nor the proof the FTC offered in support of the TRO and preliminary injunction, both of which overwhelmingly demonstrate that Defaulting Defendants violated the FTC Act and TSR. Indeed, even after more than twenty-two months of preparation time, Defaulting Defendants fail to attach a proposed answer to their Motion, leaving the FTC and the Court to guess at any factual defenses they could raise. Instead, their sole proffered defense is to attack the legal basis for the Court to impose injunctive and monetary relief. Mem. at 17– 22. As to both, their arguments misapprehend the law and this case's facts.

### 1. Defaulting Defendants have no meritorious defenses against injunctive relief.

Defaulting Defendants make essentially two arguments against the FTC's proposed injunctive relief. Each is legally baseless and, therefore, not a meritorious defense. First, Defaulting Defendants protest that the proposed default judgment extends to Defaulting Defendants' debt settlement business, which they characterize as a "substantial portion of the Arete Entity Defendants' business." *See* Mem. at 19 & n.13. Last month, however, Mr. Palacios submitted a compliance report required by the Court's Order against him (Dkt. 145), in which he declared, under penalty of perjury, that the companies' debt settlement business is not "substantial" at all: Arete "is not currently marketing, selling, or offering products for new clients but solely assisting existing clients to resolve and settle their debt. . . . Besides managing the wind down of the remaining business, I no longer hold any roles with these entities since there is no new business being

1   generated other than servicing existing clients." Fairchild Decl. **Attach. N** ¶ 4.

2   There can be no meaningful harm to Defaulting Defendants if, as their principal

3   testified, they are "solely assisting existing clients," not selling to new clients, and

4   winding down the business. The proposed default judgment would simply

5   underscore what Defaulting Defendants are doing on their own initiative.

6          Moreover, it is hornbook law that a court may impose fencing-in relief

7   broader than the conduct alleged in the complaint, especially where the

8   government is suing to protect the public interest. Equitable relief "is not limited to

9   prohibiting the illegal practice in the precise form in which it is found to have

10  existed in the past." *FTC v. Colgate Palmolive Co.*, 380 U.S. 374, 395 (1965)

11  (quotation omitted). Instead, "[h]aving been caught violating the [FTC] Act,

12  respondents must expect some fencing in." *Id.* (quotation omitted). For example,

13  the FTC may seek injunctions framed "broadly enough to prevent respondents

14  from engaging in similarly illegal practices in future advertisements." *FTC v.*

15  *Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (quotation omitted).

16  Here, the prohibitions are appropriate given the seriousness of the FTC Act

17  violations, the extent of consumer injury, and the easy transferability of the false

18  claims to debt settlement, a related service. Nor does Fed. R. Civ. P. 54(c) prohibit

19  such fencing-in relief as a default judgment; its plain language prohibits only

20  default judgments that differ "in kind" from the pleadings. The FTC's Complaint

21  prayed for a permanent injunction, Compl. at 24, which gave all Defendants

22  meaningful notice of the kind of relief the FTC would seek. *See Integrity Comms.*

23  *Corp. v. Baker*, No. 10 Civ. 3238(DAB)(RLE), 2013 WL 4830948, at *6

24  (S.D.N.Y. Sept. 10, 2013) (entering default judgment with detailed, four-part

25  permanent injunction where complaint prayed only for a "permanent injunction").

26         Second, Defaulting Defendants make much of the Court's January 27, 2020

27  *interim* Order permitting them to conduct debt settlement under the preliminary

28  injunction, but their selective quotations ignore the time-limited effect of that

Order. The Court's Order expressly provided in its preamble that it concerned "the *interim* servicing of certain consumer debt settlement accounts of Arete by the Arete Defendants *pending final resolution of the above-captioned matter or other order of this Court*." Dkt. 116 at 1 (emphasis added). It further provided: "Nothing in this Order shall be construed to limit the type or scope of any other relief or final relief that the Court may enter at the conclusion of this action." *Id.* at 6. Defaulting Defendants' Motion, however, deliberately omits the Court's express qualification. For the reasons provided in the FTC's motion for default judgment (Dkt. 161-1), this Court should enter the fencing-in provisions of the proposed revised default judgment order, which are reasonably related to the allegations of the Complaint.

### 2.   Defaulting Defendants have no meritorious defenses against monetary relief.

Each of Defaulting Defendants' three arguments against the FTC's proposed monetary relief is likewise meritless. First, Defaulting Defendants' claim that the "September 7, 2021 revised proposed default judgment includes no support or evidence for the changed calculation," Mem. at 20, relies yet again on selective quotation. Defaulting Defendants block-quote from the FTC's statement in support of the revised judgment, *id.* at 21, but they omit the statement's second footnote, which begins immediately thereafter. The FTC explained that it calculated the revised judgment amount by prorating the net total of Defendants' incoming payment processor funds, as calculated by the FTC's forensic accountant. *See* Dkt. 185 at 2 n.2. The FTC is only required to provide a restitution amount that is a "reasonable estimate of the appropriate monetary relief." *See United States v. Zaken Corp.*, 57 F. Supp. 3d 1233, 1243 (C.D. Cal. 2014). To the extent that Defaulting Defendants believed this calculation was incorrect, the burden shifted to them to show the estimate was not reasonable or accurate. *See id.* They offer no facts to do so, and now it is too late.

Second, Defaulting Defendants complain that the revised proposed default

1    judgment reduces the judgment amount by what Defendant Jay Singh paid

2    ($743,386) rather than what he and his Defendant companies owe ($7,557,001.10).

3    Mem. at 21. Their argument overlooks their joint and several liability based on

4    Defendants' common enterprise, which they do not contest.[11] *See* Dkt. 75 at 8

5    ("[T]here is evidence here that the Corporate Defendants, including Arete, are

6    operating under one common enterprise."). Mr. Singh is liable for the entire

7    $7,557.001.10 amount, but, based on evidence of his inability to pay the full

8    judgment, all but $743,386 of the judgment is suspended conditioned on his

9    truthful disclosures. *See* Dkt. 180 § V. The $743,386 has been subtracted, and

10   Defaulting Defendants bear joint and several liability for the remaining amount.

11   Third, Defaulting Defendants contend that the FTC's requested relief

12   amount "includes sums that are associated only with the consumer debt settlement

13   business." Mem. at 21 (citing Decl. of Carey Howe, Dkt. 49-1). As the Receiver's

14   forensic accountant found, Arete's student loan debt relief and debt settlement

15   revenues were extensively commingled. Dkt. 57-3 at 145–46. Mr. Howe is not an

16   accountant, and his self-serving declaration does not analyze fund transfers

17   between Arete's debt settlement and student loan accounts found by the Receiver.

18   Defaulting Defendants fail to present specific facts demonstrating the separateness

19   of their debt settlement revenues. *See FTC v. Febre*, 128 F.3d 530, 535 (7th Cir.

20   1997) (holding that the "risk of uncertainty" for monetary relief "should fall on the

21   wrongdoer whose illegal conduct created the uncertainty" (quotation omitted)).

22   The law and facts, therefore, undercut Defaulting Defendants' claim that the

23   "outcome of the suit after a full trial will be contrary to the result achieved by the

24   default." Mem. at 22 (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508,

25

26   [11] When corporate defendants operate as a common enterprise, "each may be held

27   liable for the deceptive acts and practices of the other." *FTC v. Nat'l Urological

28   Grp., Inc.*, 645 F. Supp. 2d 1167, 1182 (N.D. Ga. 2008).

513 (9th Cir. 1986)). In this regard, Defaulting Defendants' extensive reliance on *Hawaii Carpenters* (*see also* Mem. at 9, 19) is surprising, since the Ninth Circuit there *affirmed* the district court's refusal to set aside default because the defendant failed to present a meritorious defense. 794 F.2d at 514. In fact, the Ninth Circuit went even further, explaining that under the circumstances, "it would have been an abuse of discretion to set aside the entry of default" because "[t]o permit reopening of the case in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Id.* at 513. So too here. Based on Defaulting Defendants' lack of meritorious defenses, the Court should not set aside default.

## C.     Setting aside default will prejudice the FTC and consumers.

Defaulting Defendants also fail to satisfy their burden under the third *Falk* factor: showing that the FTC would not suffer prejudice if default were vacated after their nearly two-year absence from the case. In assessing whether vacating default will result in prejudice, courts consider "whether [a plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463. Delay caused by vacating default is prejudicial if it results in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI*, 244 F.3d at 701 (quoting *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996)). Similarly, a court's denial of default judgment is prejudicial if it leaves "no other means of recourse" for relief. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012).

Defaulting Defendants concede that granting their Motion will result in "further delay to awarding consumer redress," yet conclusorily brush aside the delay as "slight." Mem. at 22. But the relief they ask the Court to impose reveals that the delay will not be "slight" at all. Having failed to develop an answer even after twenty-two months, Defaulting Defendants now ask for twenty-one more days to file a response to the Complaint if their Motion succeeds. Mem. at 23. That

1   response could be an answer or a motion to dismiss on as-yet unknown grounds.

2   The briefing and decision on such a motion would likely add months, followed by

3   a new case schedule, discovery, dispositive motions, and trial—an indefinite delay

4   that could take years. Nor is Defaulting Defendants' proposed delay insignificant

5   to deceived consumers. In fact, as the declarations of consumers harmed by

6   Defaulting Defendants' deception lay bare, consumers' losses are substantial. *See,*

7   *e.g.*, PX2 [Dkt. 26] ($1,917), PX9 [Dkt. 27] ($1,003), PX11 [Dkt. 28] ($1,000).

8          In contrast to Defaulting Defendants' unsupported assertion that "the

9   interests in resolving the case on the merits outweigh an additional delay" to

10  consumers, Mem. at 22, the FTC is submitting the declaration of Nicole Christ, an

11  FTC program manager who administers post-judgment redress. *See* attached Decl.

12  of Nicole Christ ¶¶ 2–3. As Ms. Christ describes, the FTC cannot provide redress

13  to consumers until it knows the final amount of funds recovered from Defendants,

14  since that amount and the number of claims received will determine the monetary

15  recovery that each consumer claimant receives. *See id.* ¶ 4. Issuing redress quickly

16  is critical, as each day that goes by makes it less likely that consumers defrauded

17  by the unlawful student loan debt relief scheme will realize a recovery. *See id.* ¶ 5.

18  Redress payments make a difference to consumers' finances, and even small

19  delays harm consumers. *Id.* ¶¶ 6–7. And this case's consumer population—current

20  and recently former student loan borrowers—moves frequently, meaning that any

21  delay increases the likelihood that the FTC cannot locate them to provide redress.

22  *See id.* ¶ 8. If default is vacated, the harm to consumers from further months or

23  years of delay will be immense and cannot be ameliorated by other means.

24         Defaulting Defendants further proclaim, with no support, that setting aside

25  entry of default will not hinder the FTC's ability to pursue its claims because "no

26  evidence will be lost [and] discovery will not be more difficult." Mem. at 23.

27  Defaulting Defendants' certitude is gainsaid by the obstacles that will result from

28  the passage of years since the conduct at issue. Prospective witnesses move,

change jobs, die, or otherwise become unavailable. For example, Mr. Palacios himself was unavailable for service of a subpoena, despite multiple attempts, *even at the addresses he provided in his compliance declaration last month*. *Compare* Fairchild Decl. ¶ 23 & **Attach. O** *with id.* **Attach. N**. Similar unavailability, and the fading of witnesses' memories, will substantially prejudice the FTC's case.

### D.     Setting aside default after nearly two years would be inequitable.

Here, nearly two years passed after the filing of the Complaint with nary a word from Defaulting Defendants. As they acknowledge, Mem. at 11, the fundamentally equitable analysis of default includes "the length of delay and its potential impact on judicial proceedings." *Pioneer*, 507 U.S. at 395. Defaulting Defendants' extraordinary delay is precisely one of the "extreme circumstances" in which it is appropriate to uphold default, notwithstanding a court's typical inclination to decide a case on the merits. *TCI*, 244 F.3d at 696; *cf. Wells Fargo Bank, N.A. v. Weems*, No. CV 15-7768 RSWL (PJWx), 2016 WL 1118206 (C.D. Cal. Mar. 22, 2016). In *Weems*, the court denied a *pro se* individual defendant's motion to set aside default in light of her 2.5-month delay from complaint to motion, despite the "strong policy favoring adjudication of matters on the merits." 2016 WL 1118206, at *5. Such a holding must apply *a fortiori* against Defaulting Defendants—legally sophisticated entities, with represented principals, that did not retain counsel, answer, or otherwise participate in the case for twenty-two months. As this Opposition has explained, the other *Pioneer* factors—prejudice, control over the delay, and lack of good faith—likewise make vacating default inequitable.

## IV.     CONCLUSION

At a certain point in litigation, fairness dictates that defendants must be held to their choices. Here, that point has long since passed. The Court should decline Defaulting Defendants' invitation to delay consumer redress indefinitely by rewarding their choice to remain out of the case until the very last minute. For the foregoing reasons, the Court should deny the Motion to set aside default.

1    Dated:  October 29, 2021                /s/ Stephen T. Fairchild

2                                            Stephen T. Fairchild
                                             Richard McKewen
3                                            Attorneys for Plaintiff
                                             FEDERAL TRADE COMMISSION
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28